CATHERINE M. FILLMORE v. THE GREAT CAMP OF THE KNIGHTS OF THE MACCABEES FOR MICHIGAN ET AL.

*Mutual benefit associations—Death claims—Exclusive jurisdiction of local tribunal—Public policy.*

A provision in the laws of a mutual benefit association that a tribunal created thereby shall have power to pass upon all death claims, which decision shall be final, and bar any suit at law or in equity, does not so far contravene public policy as to permit members who contract with reference to it, or their beneficiaries, to seek relief in the State courts, rather than in those of the order; citing *Van Poucke v. Society*, 63 Mich. 378; *Canfield v. Knights of Maccabees*, 87 Id. 626; *Hembeau v. Knights of Maccabees*, 101 Id. 161.

Appeal from Washtenaw. (Kinne, J.) Argued October 4, 1894. Decided January 4, 1895.

Bill to set aside a resolution expelling complainant's husband from defendant's order, and to compel the payment of an endowment certificate. Defendants appeal. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*Thompson, Harriman & Thompson*, for complainant.

*McDonell & Hall*, for defendants.

HOOKER, J.   The complainant claims to be entitled to the endowment benefits of a widow of a deceased member of the defendant order.   In her bill she prays, in substance, that the executive committee of the order be required to set aside and annul a resolution and order made by them, before her husband's death, expelling him from the order; that they notify the local tent of such order, and that said local tent be required, upon said notice, to erase and annul any entry upon their records indicating such expulsion; and that said executive committee be decreed to audit and allow to her $2,000 upon an endowment certificate held by her, and the defendant order required to make an assessment upon the members of the order to pay the same.

The facts in the case are, in brief, as follows: Complainant's husband joined the order in March, 1885. At the time that he joined, the by-laws provided that no person engaged, either as principal, agent, or servant, in the sale of spirituous or intoxicating liquors as a beverage, could be admitted.   Subsequently, in the year 1892, a by-law was passed providing that—

"A member who shall hereafter engage, either as principal, agent, or servant, in the manufacture or sale of spirituous or malt liquors as a beverage, shall thereby for-

feit his membership in the order, and all rights and benefits thereof; and no money shall be accepted from him by any officer of the tent for dues and assessments. No trial shall be necessary in such cases where the fact is admitted."

Afterwards complainant's husband became the owner of stock to the amount of $5,000 in a brewery which manufactured lager beer, and action was taken to expel him. He subsequently paid one assessment, but was afterwards notified that it could not be treated as such, and would be paid back upon demand. It was not forwarded to the Great Camp. No steps were taken to appeal from the action of the order, and the husband soon died. The complainant applied for blank proofs of death, and was informed by one of defendant's officers that they would not dispute her husband's death, but that, inasmuch as he had engaged in a prohibited business, the claim had no value. This suit was then commenced.

The first question to be considered is the complainant's right to relief in this proceeding. The basis of her claim is the endowment certificate, which is as follows:

### "ENDOWMENT CERTIFICATE.

"This certifies that Sir Knight Ariel H. Fillmore is a member of Arbor Tent No. 296, located at Ann Arbor, Michigan, and that, in accordance with and under the provisions of the laws governing the order, he is entitled to receive one assessment on the membership, but not over in amount $2,000, as a benefit to Catherine M. Fillmore, his wife, upon satisfactory proof of his death, and the surrender of this certificate: *Provided* he shall have in every particular complied with the rules and regulations of the order; and in case of permanent and total disability, or upon reaching the age of 70 years, he will be entitled to receive annually thereafter one-tenth of said endowment, as provided in the laws of the order."

By the terms of this, at her husband's death she became entitled to receive from the order the sum of $2,000 upon certain conditions therein mentioned. They were: (1)

Satisfactory proof of the death of her husband; (2) surrender of the certificate; (3) that he had in every particular complied with the regulations of the order.

Among the first allegations of her bill is that of compliance by her husband with all rules and regulations. This, if not admitted, raises a question of fact upon which her right to the fund depends, and this question of fact, defendant claims, cannot be tried in the State courts, but must be tried by the tribunals of the order, and that their decision is final. Section 83 of the rules and regulations of the order is cited as sustaining this contention. It is as follows:

"The executive committee shall have power to pass on all death claims, and if, in their judgment, any such claim is not on its face a valid one, they shall notify the beneficiary or beneficiaries of the deceased member thereof, and give them or their attorney an opportunity to appear before such committee within 60 days thereafter, and present such evidence as they may have to establish the justness of said claim; and the said committee shall try, hear, and decide upon the justness or validity of such claim, and such decision shall be binding on such claimant, unless an appeal is taken to the Great Camp. The notice of the appeal from the decision of the committee must be filed with the Great Record Keeper within 60 days thereafter. The decision of the Great Camp in all such cases shall be final, and no·suit in law or equity shall be commenced or maintained by any member or beneficiary against the Great Camp."

The provisions of this section are broad. If the language means anything, it is that all who have death claims must submit them to the executive committee, and that their decision, or that of the Great Camp, if an appeal be taken, shall be final. The contention of complainant's counsel—that this section means that if the beneficiary sees fit to submit a claim to the tribunals of the order the decision is final, but if she does not choose to do so the courts have jurisdiction, which is equivalent to saying

that a beneficiary may appeal to either, at her option—does violence to the language. The section gives power to the executive committee to pass upon all death claims, in express language. If they question the validity thereof, they shall notify the beneficiary, and give an opportunity to be heard. This was done in this case, or, if it can be contended that it was not regularly done, the right of a hearing remains under this section.

It is claimed, however, that this section cannot be literally construed, because it is opposed to public policy that a citizen should be denied the privilege of the courts; and the case appears to have turned upon this point in the circuit court. This question, as applied to mutual benefit associations, is not a new one in this State. In the case of *Van Poucke v. Society*, 63 Mich. 378, it was held that a by-law which provided for a sick committee, whose duty it was to investigate and determine whether a member was entitled to a sick benefit, which decision was to be final, and said committee to be the sole deciders of the question, was a valid by-law. It is unnecessary to repeat the reasoning of the opinion. There would seem to be no reason why such a by-law could not as well be made applicable to a death benefit as a sick benefit. The beneficiary in the former case would be as much bound by the contract of her husband that she should observe the by-law as the sick member that he would do so. *Canfield v. Knights of Maccabees*, 87 Mich. 628. The question came up again in the case of *Canfield v. Knights of Maccabees*, cited above. This case arose over a death benefit, and this identical section 83 was involved. It differs from the case before us in this respect, viz., that the widow presented her claim to the committee, and afterwards appealed to the Great Camp, where the claim was disallowed, and, as in the former case, *assumpsit* was brought. In this case the question of fact, *i. e.*, whether the husband had complied with the

constitution and rules of the order, was involved. As in the former case, the by-law was held valid, and plaintiff was not permitted to recover. The question and this section were again passed upon in the recent case of *Hembeau v. Knights of Maccabees*, 101 Mich. 161, and were elaborately discussed by Mr. Justice MONTGOMERY, and authorities cited. We must consider it as settled that the section referred to is valid, and does not so far contravene public policy as to permit parties who contract with reference to it, or their privies, to seek relief in the State courts, rather than in those of the order.

The bill alleges fraud upon the part of the order, and it is further contended that complainant's case had been prejudged, and that these were sufficient reasons to entitle her to relief in equity. As to the question of fraud, we may pass it with the remark that the evidence shows no bad faith on the part of the order or committee. There is no reason to doubt the honest belief of the officers' that, under the by-law, the purchase of the brewery stock worked a forfeiture of the benefit. And unless we are to hold that the beneficiary of every expelled member is absolved from the obligation of this by-law, upon the ground that her claim is prejudged, there is no force in the latter contention. The by-law contemplates that beneficiaries will appear and prosecute their claims before the executive committee only in cases where the claims have been so far prejudged by the committee that they have concluded that the claims are invalid. In other cases there is no necessity for a hearing, for the benefits are paid. If not satisfied with the decision of the committee, the case may go before the order itself, the Great Camp, which, presumably at least, will be disposed to do justice. The Great Camp had taken no action in this matter. The most that can be said is that the Great Commander, upon request of Fillmore's local tent, made a ruling upon

the question, whereupon the local tent undertook to expel Fillmore, and later the executive committee notified complainant that, in their judgment, the claim was invalid. There is nothing here to disqualify the Great Camp. We think that the complainant should have prosecuted her claim before the tribunals of the order, in accordance with the contract made by her husband when he became a member.

The decree of the circuit court will be reversed, and the bill of complaint dismissed, with costs.

GRANT and MONTGOMERY, JJ., concurred. MCGRATH, C. J., and LONG, J., did not sit.