RAYMOND v. FARMERS' MUTUAL FIRE INSURANCE CO. OF
MECOSTA COUNTY.

1. FIRE INSURANCE — RENEWAL APPLICATION — REPRESENTATIONS
   AS TO INCUMBRANCES—FAULT OF AGENT—EVIDENCE.
   In an application for additional insurance, the answer to the
   question, "What incumbrance is there upon the property?"
   was recorded, "None." There was in fact a levy of $850,
   which existed at the time of filing the original application,
   and which was therein designated as a mortgage. It was
   claimed by the insured, in an action upon the policy, that
   both applications were written up for his signature by the
   company's secretary, who had the old application before him
   when he made out the new one, and that the answer "None"
   was not written in the new application when it was presented
   for his signature. Held, that the first application was prop-
   erly admitted in evidence in support of the contention that
   the company knew of the incumbrance.

2. SAME—IDENTIFICATION OF INCUMBRANCE IMPROPERLY DESCRIBED
   IN EARLIER APPLICATION.
   It was also proper to permit the insured to establish the identity
   of the levy with the incumbrance of which the company was
   claimed to have had knowledge by showing that the secretary
   was informed of the true character of the incumbrance desig-
   nated by him as a "mortgage" at the time of filing the first
   application.

3. SAME—PROTECTION OF PROPERTY—DUE DILIGENCE.
   In an action upon a fire-insurance policy, it appeared that the
   property insured was destroyed by forest fires; that the ten-
   ant who was occupying the place, upon discovering the
   approach of the fire, plowed several furrows around the build-
   ings; that he then loaded his household effects upon a wagon,
   and drove them to a place of safety, leaving his wife in charge
   of them; that, while he was engaged in fighting the fire,
   he was informed that his wife was ill, and he thereupon
   took her to a village a few miles distant; that, when he left,
   there were eight or ten people defending the property; that
   he brought two men from the village, and started back to the
   farmhouse, but could not get there readily, because of the
   flames. Held, that the evidence did not conclusively show a

lack of diligence in protecting the property, sufficient to avoid the policy under a provision requiring the insured to show, as a condition to a recovery thereon, that "due diligence was used to save the property exposed."

4. SAME—VACATION OF PREMISES—TEMPORARY ABSENCE.

The policy sued upon contained the following provision: "Any member vacating insured premises, and not placing some one else in charge of the same, shall bear his own risk for such time as such premises are vacant. * * * Temporary absence, like on a visit, does not create vacant property." *Held,* that there was no vacation of the premises in question, within the meaning of the policy.

5. SAME— MUTUAL COMPANIES — BY-LAWS — PROVISION FOR ARBITRATION—STATUTES.

A by-law of a mutual fire insurance company, to which each applicant's attention is directed and his written assent obtained, which provides that all differences between the company and its members which cannot be settled shall be submitted to arbitrators, the agreement of a majority of whom shall determine the matter submitted, does not contravene section 4258, 3 How. Stat., giving to members the right to maintain suits at law against such corporations for "accrued" claims, since, by the terms of the contract, no claims accrue, in case of differences, until a sum is awarded by arbitrators.

6. SAME—COURTS—OUSTING OF JURISDICTION.

Such by-law is not invalid as an attempt to oust the courts of jurisdiction,

7. ARBITRATORS—REVIEW OF PROCEEDINGS.

Errors of arbitrators, adjusting a claim, in excluding evidence that would have been admissible in a court of law, are not subject to correction by an appellate court reviewing an action at law upon the same claim.

Error to Mecosta; Palmer, J. Submitted April 30, 1897. Decided September 23, 1897.

*Assumpsit* by David L. Raymond against the Farmers' Mutual Fire Insurance Company of Mecosta county upon a policy of insurance. From a judgment for plaintiff, defendant brings error. Reversed.

*Frank Dumon*, for appellant.

*M. Brown*, for appellee.

HOOKER, J. The plaintiff is a resident of Pennsylvania, and the owner of a farm in Mecosta county, Mich., which he purchased of Dr. Whitney, who thereafter acted as his agent in relation to the property. At the time of his purchase, the buildings upon the farm were insured in the defendant company, a mutual fire insurance company, organized and doing business under the laws of this State; and, although we do not readily discover the statement in the record, it seemed to be admitted upon the hearing, as it is asserted in plaintiff's brief, that he (the plaintiff) succeeded to the ownership of this insurance. In July, 1894, additional insurance was solicited by Whitney for the plaintiff, and the secretary prepared an application, which was sent to the plaintiff by Whitney, who signed and returned it, and the policy was issued. The property was afterwards destroyed by fire, and after certain proceedings by arbitrators, which resulted in an award against the plaintiff, this action was brought, and a verdict was rendered for the plaintiff. The defendant appealed, alleging several errors. Among other things, it was claimed by the defendant, upon the trial, that the plaintiff was guilty of misrepresentation regarding, and concealment of, a levy upon the premises.

The application contained the following question, viz.: " What incumbrance is there upon the foregoing-described property?" *Answer:* "None." It was shown that there was at the time a valid execution levy upon said place for $850, and the defendant contended that there was misrepresentation in the application as stated. This application was drawn by the defendant's secretary, and sent by Whitney to the plaintiff, with directions to sign it. The plaintiff testified that the answer "None" was not in the instrument when he signed it. Whitney testified that he called upon the secretary, on behalf of the plaintiff, to obtain additional insurance, and was informed that a new

policy would be necessary, and he (the secretary) wrote it without asking any questions, having the former application at hand at the time; that he said nothing about the incumbrance, but handed the application to the witness when finished, with instructions where to have the plaintiff sign; and witness thereupon sent the paper to the plaintiff, without reading it. He also testified that he made the former application, which was written by the same secretary of the company, and that he informed him that there was a levy of $850 on the premises. This application was introduced, and contained a statement that there was an $850 mortgage on the property. Error is alleged upon the reception of this document and the testimony explanatory thereof.

The first application was competent to show what information the secretary had when he drew the second application, and we think it was competent to show the statement actually made in relation to the levy, to show that, while mentioned in the application as a mortgage, it was fully explained in its true light to the secretary at the time. It may not have been very important, but it was proper as explanatory of the transaction, and as showing that there was but one incumbrance, which was the levy, and not a mortgage. All of this testimony bore upon the question whether the secretary had knowledge of the levy at the time he wrote the application. See cases cited in brief, viz.: *Beebe* v. *Insurance Co.*, 93 Mich. 514 (32 Am. St. Rep. 519); *Ahlberg* v. *Insurance Co.*, 94 Mich. 259; *Van Houten* v. *Insurance Co.*, 110 Mich. 682; *Miotke* v. *Insurance Co.*, 113 Mich. 166.

Defendant also urges that the evidence conclusively showed a breach of the following conditions of the policy, viz.: "No member can claim more than shall appear to the directors to have been lost, and he shall show that due diligence was used to save the property exposed;" and "Any member vacating insured premises, and not placing some one else in charge of the same, shall bear his own risk for such time as such premises are vacant; and in

case of permanent vacation, or for a period exceeding 30 days, the company may cancel said policy.    *    *    * Temporary absence, like on a visit, does not create vacant property." The place was occupied by a tenant named Ward. The fire started in the woods, and it would seem that forest fires were prevalent. Ward, on discovering its approach, plowed furrows around the buildings, in several places. He then loaded his household effects upon a wagon, with a view to saving what he could. Soon after, neighbors arrived, and an attempt was made to save the property, the wagon being driven down in the lane, by a spring. The colts and cows were driven down ahead of the wagon, and Ward's wife, who was *enceinte,* watched them there. While engaged in fighting fire, a neighbor named Sample came up, and told Ward that his wife could not stand it much longer, and that he had better take her and his things to a place of safety, which he did. It was very smoky. He drove to a place which was burned over, and left his things there, with a view to having his wife take care of them; but she was sick, and he got a buggy, and took her to Chippewa Lake, a few miles distant, leaving his things where they were. Then he took two men, and started back to the place, but could not get there readily, by reason of the fire. Whitney, the agent, was present at the farm for a time, but left before Ward did. Counsel insists that the letter of the contract imposed the risk upon the plaintiff while the place was vacant, "whether caused by sickness or even death of Ward's wife." We think this was not vacating the place, or leaving it vacant, under the terms of the policy, and that the judge committed no error in saying so to the jury. When Ward left, there were eight or ten people there, defending the property against fire. Counsel sought to show by the acts and conversation of these people that they were not diligent in protecting the property. The court properly excluded this testimony. He left the question of diligence to the jury, under quite as favorable instructions as the defendant was entitled to.

The further point is made that the arbitration had between the parties should be held conclusive against the plaintiff.   This is based upon a by-law which provides:

"Any and all differences between this company and any of its members which cannot be settled, arising from the adjustment of losses or auditing of claims, shall be submitted to three arbitrators.   *   *   *   On the day of hearing, each party shall state his case in writing to the arbitrators, and furnish such additional information as shall be required by the arbitrators.   They shall then take the case under consideration, apart by themselves, and determine and decide what is equitable and right between the parties, under the charter and by-laws of this company and the laws of this State.   Their decision shall be communicated in writing, over the signature of all three of them, to the parties in controversy, each to be furnished with a copy.   The conclusion or agreement of a majority of the arbitrators shall determine the matter before them.   Their decision shall be filed in the office of the secretary of the company, together with the statement of the parties and other information furnished by them. When such decision or finding of the arbitrators has been complied with, it shall be a final settlement of the controversy, the compliance to be noted or receipted on the written document or decision on file in the secretary's office.   After the case is thus settled, neither party shall have any right of action at law or in equity on account of the matter thus submitted to arbitrators; and if either party shall refuse to arbitrate the difference between them, or fail to comply with the decision of the arbitrators after the matter has been submitted to them, and goes to law for his claim, he shall pay the whole cost of said suit, and the excess of the finding or judgment of the court over the claim of this company.   The board of directors shall make this by-law a condition of all applications for and policies of insurance, and other contracts entered into by this company."

The articles, or charter, as it is called, contain a provision which is said to authorize the by-law quoted.   It is as follows:

"The board of directors shall provide for settlement by arbitration of all differences between the company and its members, making it a condition of membership and insurance."

The application contained the following question and answer:

"Will you submit all unadjustable differences between yourself and this company to arbitrators, as provided for in section 41 of the by-laws of said company, and abide by their decision?

"*A.* Yes."

The learned circuit judge was of the opinion that the law under which this company was organized does not authorize this by-law, and that the by-law is in conflict with rights which 3 How. Stat. § 4258, gives to members. That section provides that—

"Suits at law may be maintained by any corporation formed under this act against any of its members for any cause relating to the business of such corporation; also, suit at law may be prosecuted and maintained by any member against such corporation for claims which may have accrued, if payments are withheld more than 60 days after such claims shall have become due."

Counsel also contends that the contract is one which would "oust the jurisdiction of the courts," and is therefore void, citing a number of cases in support of the proposition.

Unless we are to distinguish between policies of mutual insurance companies, indemnifying against loss by fire, and mutual benefit certificates, providing for sick and death benefits, we must consider the last question settled by our former decisions. In *Van Poucke* v. *Netherland, etc., Society,* 63 Mich. 378, it was held that a condition requiring a doctor's certificate, and providing that the determination of an investigating committee should be conclusive of the member's right to a benefit, was valid and binding. This was followed by the case of *Canfield* v. *Knights of Maccabees,* 87 Mich. 626 (24 Am. St. Rep. 186), which was a case of death. *Hembeau* v. *Knights of Maccabees,* 101 Mich. 161 (45 Am. St. Rep. 400), was similar, as also was *Fillmore* v. *Knights of Maccabees,* 103 Mich. 437. The language of Mr. Justice MONTGOM-

ERY in *Hembeau* v. *Knights of Maccabees* seems to accurately describe the situation here.    He said:

"This is not a case of an attempted exclusion of remedy by the legislature, but a case where the parties have agreed that only on certain terms and under certain conditions shall a member be entitled to receive any benefits, or the beneficiary named be entitled to receive any sum in case of the death of the member."

We cannot distinguish between this case and one that arises upon a certificate of a mutual benefit society insuring life.    The language used in the cases cited seems equally applicable to this.    Nor can we say consistently that the by-law is inconsistent with section 4258 of the statute, which only mentions claims that have become due.    By the terms of the contract, this claim has not become due, and could not, unless a sum should be awarded by the arbitrators.

The record shows that the arbitrators took what the courts would consider an erroneous view of the legal rights of the parties, and there is some reason for believing that testimony admissible upon a trial in a court of law was excluded; but we cannot correct errors of this sort on this record,—if they can be corrected in any proceeding, which we do not mean to imply.    *Weggner* v. *Greenstine, ante,* 310; Morse, Arb. & Award, chap. 10.

While we feel constrained to reverse the judgment upon the latter point, we have discussed the case upon all of the points raised, that the defendant may understand the legal effect of its policy, and correct any wrong which may have arisen from a misapprehension of the legal rights of the parties if it is disposed to do so.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.