HOGADONE *v.* GRANGE MUTUAL FIRE-INSURANCE CO.

133 339
e153 ¹ 24

1. DEEDS—RECORD—NONDELIVERY—INTENT TO PASS TITLE—FIRE INSURANCE—BREACH OF CONDITION OF POLICY.

Where a deed is executed and recorded, but not delivered, and there is no intention on the part of the grantor that title shall pass, it does not do so. Such circumstances, therefore, do not constitute a breach of a condition of a fire policy against any "change of title or ownership" of the property insured.

2. SAME—EVIDENCE—FINDINGS OF COURT.

Upon an issue whether title had passed by plaintiff's deed to his wife, which he had caused to be recorded but had not actually delivered, he testified that the deed was made with intent to transfer the property, and that, when he placed it on record, he understood that he had transferred the property, and that the title was then in her; but he also testified that he did not intend to give her the property and release his claim to it, and that his only object was to get the record title out of his name, so as to ward off creditors. *Held,* to justify the court in refusing to find an intent to pass title.

3. FIRE INSURANCE—MUTUAL COMPANIES—PROVISION FOR ARBITRATION—CONSTRUCTION.

    A provision in a fire policy issued by a mutual company, to the effect that, in case of disagreement "as to the amount of valuation, in whole or in part, said matter in difference shall be determined by the arbitration committee," whose decision as to "the justness or validity of such claim" shall be final, and preclude any suit "to fix such amount or valuation," relates only to cases of disagreement as to the "valuation," and is not applicable to a controversy between the parties in which the validity of the claim against the company is in question.

Error to Kent; Perkins, J. Submitted April 7, 1903. (Docket No. 3.) Decided May 29, 1903.

*Assumpsit* by George P. Hogadone against the Grange Mutual Fire-Insurance Company of Kent and Ottawa counties on a policy of insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

*Lombard & Hext*, for appellant.

*E. J. Adams* and *Colin P. Campbell*, for appellee.

CARPENTER, J. Plaintiff recovered a judgment of $600 in the court below for loss under an insurance policy issued by defendant. The trial took place before the court, who made a finding of facts. Defendant asks to have that judgment reversed, *first*, because the policy became void by reason of a transfer of the property from plaintiff to his wife; *second*, because a provision in the policy gave exclusive jurisdiction to the auditing committee of defendant's organization to determine the controversy. The finding of the trial court, so far as material to the controversy in this court, is as follows:

"That on the 17th day of October, 1899, the said defendant issued a policy of insurance to the said plaintiff in the sum of $2,079 upon the following described property, and in the several amounts stated: Dwelling house number one, and accompanying outbuildings, $600;  *  *  * personal property, $825.  *  *  *

" 'In case of disagreement with the loser of property insured as to the amount of valuation, in whole or in part, said matter in difference shall be determined by said auditing and arbitration committee, and, in case of such disagreement, said board shall notify such loser of property, and give him an opportunity to appear before such board within 20 days thereafter, and present such evidence as he may to establish the justness or validity of such claim; and such board shall try, hear, and decide upon the justness or validity of such claim, and such decision shall be final and binding upon such claimant and said company, and no suit in law or equity shall be commenced or maintained by any such loser or beneficiary to fix such amount or valuation. * * *

" 'In case of any increase of risk to property insured in this company, or any change of the title or ownership of insured property, * * * the policy shall be null and void.' * * *

" October 30, 1899, the plaintiff was indebted as accommodation indorser upon some notes which were then, and had been for some little time, a source of annoyance to him. He advised with Mr. Fitz Gerald, an attorney at law and a member of this bar, and a gentleman friend and neighbor by the name of Kipp, and, acting under their advice, he did, on the 30th day of October, 1899, execute a warranty deed running to his wife, covering the lands upon which the buildings described in said policy of insurance were situated. Said deed was, by its terms, made subject to two mortgages, aggregating $4,000. Upon the same day of its execution he left it for record with the register of deeds of said county, where it remained until after the commencement of this suit, when it was delivered back to him, and he delivered it to his attorney in this case. His wife knew of the plaintiff's indebtedness, and that his creditors were threatening to enforce the same. The plaintiff, before executing the deed, told her that he had taken counsel, and had been advised to transfer the title to her to keep it away from his creditors, but he didn't know what he would do; and, within a few days after making and recording the deed, he told her that he had done so, and, when so told by her husband, she made no objection to it, nor did she express an acceptance of it. There was no consideration passed from the wife to the husband for the deed, no change in the occupancy of the premises, and the plaintiff continued in full control of the premises described in the deed, selling the products, appropriating the money to his own use, paying the taxes, and exercising the identical and same control in every respect as before

the deed was made. His sole purpose in making said deed was to frighten off the creditors that were annoying him by reason of this accommodation indorsement, and prevent their getting the property. The wife never had manual possession of the deed, and never saw it until she was upon the witness stand in this trial.

"On the 21st day of February, 1901, the house and contents were destroyed and damaged by fire,—the house entirely destroyed, some of the contents entirely destroyed, and some of them partially destroyed. * * *

"On the 18th day of May the said auditing and arbitration committee met, and rejected plaintiff's claim as to the real estate, and allowed it as to the personal property at the sum of $179.25, which amount was afterwards paid to the plaintiff by the defendant, and accepted by the plaintiff to apply upon his claim."

1. Did the plaintiff avoid the policy by transferring the property to his wife? According to the finding of facts, though the deed was recorded, it was never delivered, and plaintiff did not intend that the title should pass. Under these circumstances the title would not pass. *Stevens v. Castel*, 63 Mich. 111 (29 N. W. 828); *Davis v. Davis*, 92 Iowa, 147 (60 N. W. 507); *Weber v. Christen*, 121 Ill. 91 (11 N. E. 893, 2 Am. St. Rep. 68); *McGraw v. McGraw*, 79 Me. 257 (9 Atl. 846). Defendant's counsel, however, strenuously insist that the undisputed evidence required the trial court to find that plaintiff left the deed for record with intent to pass the title to his wife, and error is assigned because such finding was not made. As might be expected, the only witness who gave direct testimony respecting this intent is the plaintiff himself, and defendant insists that it was the duty of the court as a matter of law to find that this testimony proved such intent. It is true that plaintiff testified, when being examined by defendant's counsel, that the deed was made with the intent of conveying and transferring the property, and that, when he placed the deed on record, he understood that he had transferred the property to his wife, and that the title was then in her. Subsequently, while under the examination of his own counsel, however, plaintiff testi-

fied that he did not intend to give his wife the place and release his claim to it; that his sole and only purpose was to make the record title appear out of his name, for the purpose of frightening off or warding off an unjust claim; that he handed the deed to the register of deeds to change the record, and that he did not understand the difference between the record title and the actual title. While this testimony would have warranted the finding that there was an intent to pass the title, it is equally clear that, considered with the other facts found,—viz., plaintiff's desire to deceive his creditors, and at the same time keep the property,—it justified the court in refusing to make that finding. We cannot say, therefore, that the court erred in refusing to make the finding requested by defendant.

2. Did the contract of insurance give defendant's arbitration committee exclusive jurisdiction to determine this controversy between the parties? If it did, under the authority of *Canfield* v. *Knights of Maccabees*, 87 Mich. 626 (49 N. W. 875, 13 L. R. A. 625, 24 Am. St. Rep. 186); *Hembeau* v. *Knights of Maccabees*, 101 Mich. 161 (59 N. W. 417, 49 L. R. A. 592, 45 Am. St. Rep. 400); *Fillmore* v. *Knights of Maccabees*, 103 Mich. 437 (61 N. W. 785); *Raymond* v. *Insurance Co.*, 114 Mich. 386 (72 N. W. 254); and *Russell* v. *Benefit Ass'n*, 116 Mich. 699 (75 N. W. 137),—it would afford a complete defense to this suit. But we are of the opinion that the agreement for this arbitration relates only to cases of "disagreement as to the amount of valuation, in whole or in part," and therefore is inapplicable to this controversy, in which the disagreement related to the validity of the claim.

The judgment of the court below must therefore be affirmed, with costs.

The other Justices concurred.