Argued April 2, reversed May 29, 1928.

# M. R. SCHOENEMAN *v.* THE HARTFORD FIRE INSURANCE COMPANY.

(267 Pac. 815.)

**Insurance—Language of Insurance Contract is Construed Favorably to Insured.**

1.  Language used in contract of insurance is entitled to construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment is indulged to prevent forfeiture.

**Insurance—Farmhouse Which Insured Left, Taking Ordinary Clothing and Household Goods, and to Which He Returned Weekly for Purpose of Inspection While Living in City, Held "Vacant" or "Unoccupied" Within Fire Policy.**

2.  Where insured moved away from farm dwelling two years before fire, renting rooms in city and later renting dwelling, having taken clothing and ordinary household articles away, house was "vacant" or "unoccupied" for over ten days within terms of provisions for forfeiture of policy, notwithstanding insured made almost weekly visits to property for purpose of inspection; "vacant" referring to condition of building as empty or containing substantially nothing, while "unoccupied" refers more particularly to human habitation or actual living in the dwelling.

**Insurance—Question Whether Farmhouse, to Which Insured Living Elsewhere Returned Weekly for Purpose of Inspection, was Vacant or Unoccupied, Held for Trial Court.**

3.  Question whether house insured against fire had been vacant or unoccupied for period of ten days within provision for forfeiture in policy *held* question for trial court in action on policy, where insured had lived elsewhere and had removed his clothing and ordinary household effects, and returned only weekly for purpose of inspection.

---

Fire Insurance, 26 **C. J.,** p. 72, n. 19, p. 212, n. 61, 62, 67, p. 213, n. 85, p. 551, n. 88.

Occupation, 29 **Cyc.** p. 1344, n. 36.

1.  See 14 **R. C. L.** 926.

2.  Significance of "vacant and unoccupied" and like expressions, see note in 10 Am. St. Rep. 390. Meaning of "unoccupied" or "occupied" in policy with reference to building, see note in Ann. Cas. 1912D, 82. When is insured property vacant or unoccupied, see note in 2 **L. R. A.** (**N. S.**) 517. See, also, 14 **R. C. L.** 1103.

3.  See 14 **R. C. L.** 1103.

From Marion: L. H. McMAHAN, Judge.

This is an appeal from a judgment rendered for plaintiff in the amount of $750 and interest, and for the further sum of $250 as special attorney's fees. The action was predicated upon a policy of insurance against loss or damage by fire.

The plaintiff, a butcher by trade, was the owner of a dwelling-house situate on a 50-acre tract of land in the foothills northwest of Dallas, Polk County, Oregon, which, at the time the policy of insurance was written, he was engaged in farming. On October 24, 1922, the defendant Insurance Company, in consideration of the payment of $20 to it by plaintiff, issued to plaintiff its insurance policy insuring the above dwelling and furniture therein contained against all direct loss or damage by fire, in an amount not exceeding $1,000, for three years, i. e., until noon, October 24, 1925. Five hundred dollars of the insurance was placed upon the one-story shingle roof frame dwelling-house, and $500 on household furniture, wearing apparel, musical instruments, jewelry and pictures.

On November 13, 1924, the property described in the policy was totally destroyed by fire. The plaintiff made his proof of loss, but the defendant refused to pay the damage sustained by plaintiff by reason of such destruction, and, in justification of its refusal, cited plaintiff to the following condition set out in the policy:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if * * a building herein described * * be-

come vacant or unoccupied and so remain for ten days."

REVERSED.

For appellant there was a brief over the name of *Messrs. Veazie & Veazie*, with an oral argument by *Mr. J. C. Veazie.*

For respondent there was a brief over the names of *Mr. R. H. Bassett* and *Mr. William H. Trindle*, with oral arguments by *Mr. Bassett* and *Mr. Kenneth Randall.*

BROWN, J.—It appears that plaintiff's farming operations were not succesful. He purchased the land for a small down payment, but, on account of his inability to make further payments, or to make a success of farming, he soon abandoned the place and went to work at his trade in Dallas. In the meantime he disposed of his stock and paid neither interest nor taxes on the land. He took furnished rooms at Dallas and remained there for something like a year. Thereafter he removed to Independence, where he and his housekeeper rented a dwelling and resided for another year. Plaintiff now contends that the farmhouse neither became vacant nor unoccupied by reason of his dwelling elsewhere, because, as he claims, he made visits to it almost weekly; his theory apparently being that these visits constitute occupancy within the meaning of the insurance policy. Therefore, the attention of this court is at once directed to the meaning of the term "vacant or unoccupied," as used in the contract of insurance.

A generally accepted and concise definition of the term "occupancy" is thus stated in Anderson's Dictionary of Law:

"Occupation of a dwelling house, within the meaning of a policy of insurance, requires that there be in the house the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but the house must be the place of usual return and habitual stoppage."

In 8 Words and Phrases, 7258, the editor quotes from the case of *Norman* v. *Missouri Town Mut. Fire Ins. Co.,* 74 Mo. App. 456, 459, where there appears the following comprehensive treatment of the terms which are the subject of dispute in the case before us:

" 'Vacant' and 'unoccupied' are not synonymous—though sometimes so used. 1 May on Ins. (3 ed.), § 249a; Ostrander on Fire Ins. (2 ed.), § 144. Vacancy, correctly speaking, can only occur when the building is empty, contains substantially nothing; while occupancy, when speaking of residences, refers more particularly to human habitation, the *pedis possessio* or actual living in the dwelling. The last named author thus illustrates the difference between vacant and unoccupied: 'The distinction,' he says, 'is perhaps more clearly marked in the case of a dwelling house from which the family has removed, leaving a portion of their household goods in the building. It will not be vacant, but occupation is at an end when it is no longer the place of abode of any living person.' In *Herrman* v. *Merchants' Ins. Co.,* 81 N. Y. 184 (37 Am. Rep. 488), Judge Earl says: 'A dwelling house is unoccupied when no one lives therein, but it is not then necessarily vacant. A house filled with furniture throughout * * cannot be said to be vacant, the primary and ordinary meaning of which is empty.' So in this case, though the dwelling in question was at the time the fire occurred unoccupied—that is, there was no one living in it—yet it was not vacant, that is empty. It is true that all the household goods of the tenant were not then in the building—a portion had been moved, but there was a substantial portion remaining, and the tenant

had the actual use of the house to shelter and protect his goods; they were 'under lock and key.' "

Again, from 13 Am. & Eng. Ency. of Law (2 ed.), pages 274, 275, we quote:

"For a dwelling house to be in a state of occupation, there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage. It is not sufficient, therefore, that furniture, tools, or other chattels may be left in the building, or that it is occasionally visited and inspected by some one, or is used and controlled, though not inhabited, by a tenant, or is used temporarily as a place of abode."

Mr. Cooley, in his work on the Law of Insurance, discusses this question at length, and from that discussion we take the following, which is couched in language clear and understandable:

"A dwelling is occupied when it is in actual use by human beings who are living in it as a place of habitation. Bearing in mind the distinction between 'vacant' and 'unoccupied,' and the qualification * * that a house may be unoccupied, and yet not be vacant, it may be said that, in a general sense, a dwelling is 'unoccupied' when it has ceased to be a customary place of habitation or abode (numerous citations, including *Weidert* v. *State Ins. Co.,* 19 Or. 261 (24 Pac. 242, 20 Am. St. Rep. 809). This principle does not imply that there must be some one in the house constantly, or that it must be occupied by a family, or that it must be put to all the uses to which a dwelling is usually put. The only essential is that it is the usual place of abode (citations). * *

"Consequently, if the house is not actually occupied, the requirement is not satisfied by the frequent visits of the owner or some other person whom he has employed for such purpose (citations)." 2 Cooley, Briefs on the Law of Insurance, 1666.

In his proof of loss, the plaintiff said:

"That during the time, or period of time, of six months prior to the destruction by fire of the dwelling house, I visited the farm each week end with few exceptions. * * That on my visits to the farm I often went up from Independence on Saturday nights and stayed over until Sunday evening. However, more often I went up on Sundays and returned the same day. * * That on these visits I inspected the fences enclosing my land to see that no stray cattle should get into and on my property. * * That upon these visits I was alone except upon two or three times, when I was accompanied by a second party.

"That during this time I was living in Independence, I rented part of the time furnished apartments, and part of the time had to rent a house and furnish it myself. * *

"That for a period of time of three months or more prior to the 1st of July, 1924, I lived in the house I had rented and did most of my own cooking and housekeeping."

Plaintiff testified that, during his two years' absence from the farm, he conducted no farming operations. He further testified:

"Q. When you left the place, what was your intention of returning and making it your home? A. My intention was to return at any time I could see my way clear to make the payments on the debt that was still against it, pay the interest and the taxes and keep up the place, and eventually that way get it paid for. * *

"Q. And you intended to come back there and live on the place whenever you were financially able to do so? A. No, I had it in mind to own it as a home even during that time. I wanted it to be my home.

"Q. I understand you wanted it to be your home, but really intended to come back and live there when you were able to pay off your debt? A. As soon as I was able, yes.

"Q. And in the meantime you went to Dallas and stayed there and worked, didn't you? A. Yes.

"Q. For something like a year? And I think you said these articles of clothing you left in the house were those you were not using? A. Yes.

"Q. You stored them away in the attic? A. Yes.

"Q. They would stay there until you got ready to go back and live there permanently? A. Yes.

"Q. And the clothing and articles of that kind you used regularly in the course of your daily life you took along with you? A. Yes, sir.

"Q. You had those at Dallas? A. Yes. * *

"Q. These things you left at the farm, if I may ask again, were such things as you didn't need regularly in the ordinary course of your life? A. Yes."

1. The language used in the contract of insurance is entitled to a construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed in support of a view that will protect the insured and defeat forfeiture: *Barry* v. *Prescott Ins. Co.*, 42 N. Y. 601. However, the terms "vacant" and "unoccupied" as used in the policy have had a well-defined meaning in this jurisdiction from the time of the decision in the case of *Weidert* v. *State Ins. Co.*, 19 Or. 261 (24 Pac. 242, 20 Am. St. Rep. 809). In rendering the opinion in that case Mr. Justice STRAHAN defined the term "unoccupied" as used in the insurance policy there involved; and notwithstanding that since that decision was rendered about forty years ago session after session of the legislature has met and enacted insurance legislation, no change has been made in that definition.

2, 3. Conceding for the purpose of this cause that, because it had not been deprived of all of plaintiff's household goods the house in question was not va-

cant, still from the testimony of plaintiff himself we are compelled to hold that his farmhouse was not occupied by any human being for more than ten days immediately preceding the fire. In truth, he had changed his domicile or place of occupancy from the farm to Dallas about two years prior to the fire, and, about one year previous to the burning had taken up his place of abode at Independence.

In the case of *Raymond* v. *Farmers' Mut. F. Ins. Co.,* 114 Mich. 386 (72 N. W. 254), it was held that temporary absence, as a visit, does not create vacant property. By analogy we hold that temporary visits, such as plaintiff's visits to his farm, do not maintain or recreate an occupancy.

We have given plaintiff's testimony full credence. There is no disputed question of fact to go to the jury. In such a case, the method of procedure is properly set out in 26 C. J. 551, in the following language:

"Where, however, there is no evidence on an issue of fact, or the evidence thereon is undisputed or conclusive, or so slight that a finding in favor of the party asserting the existence or nonexistence of the fact would not be sustained, the question should not be submitted to the jury, but it becomes one of law for the court, which it may dispose of by nonsuit, or dismissal, direction of a verdict, or otherwise."

The trial court should have allowed the defendant's motion for a nonsuit.

This cause is reversed and remanded.

REVERSED AND REMANDED.

RAND, C. J., and BEAN and BELT, JJ., concur.