Argued March 31, reversed and remanded May 19, 1954

# LAND *v.* WEST COAST LIFE INSURANCE COMPANY

### 270 P. 2d 154

*Denton G. Burdick, Jr.,* of Portland, argued the cause for appellant. With him on the briefs were Cake, Jaureguy & Hardy, of Portland.

*John C. Veatch* argued the cause for respondent. On the brief were Veatch, Bradshaw & Veatch, of Portland.

Before WARNER, Acting Chief Justice, and ROSSMAN, LUSK and BRAND, Justices.

## WARNER, A. C. J.

This is an action to recover benefits alleged to have accrued under a life insurance policy. From a judgment on the pleadings in favor of the defendant West Coast Life Insurance Company, the plaintiff Marie Elizabeth Land appeals.

Plaintiff is a member of the Oregon State Employees' Association (hereinafter called the "association"), a nonprofit corporation composed of persons employed by the state of Oregon and who are insured under a group life insurance policy issued by the defendant.

The defendant West Coast Life Insurance Company (hereinafter called the "company") is a California corporation authorized to do business in the state of Oregon.

A rider attached to the group policy issued by the company authorized the association, in consideration of the payment of certain premiums, to insure the "dependents" of its insured members. This rider defines a "dependent" as "only a Member's legitimate unmarried child over three months of age but under eighteen years of age, or a Member's spouse under sixty-five years of age, neither of whom is a Member of the Association eligible for insurance under the Group Policy."

Plaintiff, as an insured member of the association, exercised the privilege of insuring dependents and applied for coverage on the life of her husband, James Howard Land. Thereafter, through the association she paid the company the monthly premium specified for such insurance.

In October 1949, subsequent to the issuance of the insurance on Mr. Land, plaintiff and her husband were divorced; but notwithstanding the dissolution of that marriage, the association continued to pay to the company from month to month, as the same became due, the premiums payable on the insurance issued on the life of Mr. Land. These premiums were paid regularly to and including the 30th day of March, 1950, when Mr. Land died. The Lands' divorce did not become known to the company until after Mr. Land's death, when plaintiff made demand for the sum of $1,000 as the death benefit due under the policy. The company refused to honor the claim and refunded to the association the premiums collected subsequent to the date of the divorce.

The only question presented for our determination is whether plaintiff's divorce precludes her from collecting on the policy issued on the life of her former husband.

1. Speaking generally, group insurance is the coverage of a number of individuals by means of a single or blanket policy, thereby effecting economies which frequently enable the insurer to sell its services at lower premium rates than are ordinarily obtainable for the same type of insurance protection under life policies sold to individuals. 1 Appleman, Insurance Law and Practice, 36, § 41; 1 Couch, Cyclopedia of Insurance Law, 44, § 29; Vance, Insurance 3d ed, 1034, § 203; 44 CJS 479, Insurance § 15.

The respondent company strongly intimates, but does not demonstrate, the existence of a body of law outside the domain of statutory regulation peculiarly applicable to group insurance in contradistinction to the rules generally applied to the construction of ordinary individual life policies. It is not strange that respondent is unable to cite us successfully to law which would support its thesis, for the reason that group insurance policies are relatively new and have not been, to a very wide extent, the subject of judicial consideration. This was recognized in *Zeigler v. Equitable Life Assur. Soc.*, 219 Iowa 872, 259 NW 769, 770 (1935) where the court said:

"* * * Moreover, the policy contracts are so different in their terms, and the machinery devised and used for the collection of premiums and distribution of benefits are so varied, that only a limited aid can be obtained by an examination of precedents. Such policies are, however, contracts and, like other contracts, must be enforced according to their terms. And being contracts for insur-

ance, if need for construction arises, they must, in accordance with a well-established rule, be construed liberally in favor of the insured."

Also see *Garnsky v. Metropolitan Life Ins. Co.*, 232 Wis 474, 287 NW 731, 124 ALR 1489 (1939); 29 Am Jur 186, Insurance § 167.

■ While new problems necessarily arise because of the group features of this insurance, it is clearly held that the ordinary principles of personal insurance apply to the construction of these contracts. 1 Appleman, Insurance Law and Practice, 36, § 41; 29 Am Jur 1027, Insurance § 1370.

■ The language used in a contract of insurance is entitled to a liberal construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed in support of a view that will protect the insured and defeat a forfeiture. *Smith v. Ind. Hosp. Assn.*, 194 Or 525, 532, 242 P2d 592; *Schoeneman v. Hartford Fire Ins. Co.*, 125 Or 571, 577, 267 P 815. It is applicable to group insurance contracts. 44 CJS 1183, 1189, Insurance § 297.

■ Among other rules of law peculiar to insurance contracts, including group insurance, is the fundamental principle that one taking out a policy of insurance on the life of another for his personal benefit must have an insurable interest in the life of the one so insured. 2 Appleman, Insurance Law and Practice, 77, § 761; 1 Cooley, Briefs on Insurance 2d ed, 330. As a general rule, the insurable interest of a wife in the life of her husband ceases upon a divorce of the parties (175 ALR 1222; 52 ALR 387), but such an event does not necessarily negative her right to recover under a policy issued to her. Under the rule prevailing in most

jurisdictions, a life policy originally valid does not lose its vitality solely because of the cessation of the insurer's interest in the life of the insured, unless such be the necessary effect of the provisions of the policy itself. 175 ALR 1224; 52 ALR 389; 2 Appleman, Insurance Law and Practice, 91, § 763; 1 Cooley, Briefs on Insurance 2d ed, 414-418; Vance, Insurance 3d ed. 185-187, § 31.

■■ *Conn. Mut. Life Ins. Co. v. Schaefer,* 94 U. S. 457, 24 L ed 251, is the leading case in the United States, holding that an insurable interest existent at the inception of the life insurance contract does not have to continue status quo to and until the death of the party insured. In the Schaefer case the surviving wife of the insured had received a divorce prior to the death of her husband. The United States Supreme Court held (94 US 461): " * * * We do not hesitate to say, however, that a policy taken out in good faith, and valid at its inception, is not avoided by the cessation of the insurable interest, unless such be the necessary effect of the provisions of the policy itself. * * *"

Applying the rules applicable under individual life insurance policies on the life of another, wherein the insured is a spouse of the beneficiary, it follows that unless there were provisions within the instant insurance contract, the necessary effect of which would terminate the coverage when the Lands were divorced, the lower court's holding cannot be sustained.

We now turn to examine the terminal provisions of the company's contract. Its master policy provides for termination as to an individual member (in this instance, the plaintiff Mrs. Land) upon the happening of any of the following contingencies:

"Insurance upon the life of any Member in-

sured hereunder shall cease automatically at the earliest of the following dates:

"(a) The date the Member ceases to be a Member in good standing in the Association, or

"(b) The last day of the policy month in which the Member is granted leave of absence, is temporarily laid off, is retired, is pensioned, or otherwise discontinues active full time work for the Employer, or except as provided under Extended Insurance

"(c) The date of expiration or discontinuance of this Group Policy, or

"(d) The date of expiration of the period for which the last premium contribution, if any, is made by the Member, or

"(e) The date the Member attains age sixty-five.

"Irrespective, however, of any other provision herein, the insurance of any Member shall automatically terminate thirty-one days after such Member leaves for the purpose of entering the military, naval or air service of any country at war (whether declared or undeclared) or for the purpose of travelling, residing or working outside the forty-eight states of the United States of America and the District of Columbia."

A somewhat similar provision is contained in the rider attached to the master policy which applies to the termination of the coverage issued on dependents of any member (in this instance, the late Mr. Land) and in this respect reads as follows:

"The insurance of any Member hereunder with respect to a dependent shall automatically terminate at the earliest applicable time indicated below; namely:

"(a) the date of expiration of the period for which the last premium contribution, if any, is made by the Member for insurance under this Rider, or

"(b) the date of termination of the Member's insurance under the Group Policy, or

"(c) in the case of a child dependent, when the child attains the age of eighteen years or on the date of the child's prior marriage, and in the case of a spouse dependent, when the spouse attains the age of sixty-five years; provided in either case that upon request therefor any premium paid which is unearned by reason of such automatic termination shall be refunded to the Association, which shall refund to the insured Member concerned the portion thereof to which such Member is entitled, or

"(d) in the case of a dependent who becomes a Member of the Association, on the date such dependent becomes eligible for insurance under the Group Policy, or

"(e) immediately upon discontinuance of this Rider and/or the Group Policy."

■ Nowhere in the policy or in the rider is there a provision that insurance issued on the life of a dependent spouse shall terminate in the event dependent's relationship to the member shall end by divorce.

The instant policy, as we have noticed, extends two insurance opportunities to each member, i.e., coverage for the member and the unique right of the member to secure coverage for all eligible dependents of the member who are outside the member group. It is expressly provided that if such dependent subsequently becomes a member of the group, then the insurance of the member "with respect of a dependent shall automatically terminate".

It is clear that it was not Mr. Land's relationship to the group that made him insurable under the contract. Rather it was his relationship to the plaintiff as a member of the group that controlled. The right to insure was, therefore, in the plaintiff, not in her husband. Here the certificate was not issued to the husband but was taken out by the plaintiff wife on

the life of her husband and in much the same manner and with the same liability on the part of the insuring company as if Mrs. Land had initially and directly contracted with the company for an individual policy on the life of her husband. If the company had wished to limit the vitality of the coverage on Mr. Land's life to the period while he continued as a dependent spouse, it should have done so by appropriate provision in the insurance contract.

In the absence of such provisions within the insurance contract here construed, indicating that the right of Mrs. Land, the plaintiff, to the proceeds of the policy was conditioned upon the continuance of the marital relationship, we are compelled under the familiar rule referred to above to reverse the holding of the lower court and remand the cause for trial.