Argued and submitted September 9, 2003, affirmed January 14, 2004

Delia L. SCHMIDT,
*Appellant,*

*v.*

UNDERWRITERS AT LLOYDS OF LONDON,
*Respondent.*

0201-00717; A119759

82 P3d 649

Michael O. Moran argued the cause for appellant. With him on the briefs was Black, Helterline, LLP.

Justin M. Thorp argued the cause for respondent. With him on the brief was Martin, Bischoff, Templeton, Langslet & Hoffman, LLP.

Before Edmonds, Presiding Judge, and Armstrong and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff insured appeals after the trial court granted summary judgment to defendant insurer on plaintiff's claim for loss under her fire insurance policy. ORCP 47 C. We affirm.

The material facts are not in dispute. In late January 2001, plaintiff purchased a house in Pendleton with the intention that it become her son's residence. She obtained an insurance policy for the property from defendant that provided coverage for loss from fires from February 14, 2001 through February 14, 2002. Soon thereafter, plaintiff's son began paying rent to plaintiff for the Pendleton house in anticipation of his relocation there from Portland. Plaintiff and her son also took some of his belongings to the house in late February. At that time, they performed house cleaning tasks and some repair work, but no one stayed overnight at the house because the power, water, and heat were not turned on until April 2, 2001. During the February visit to Pendleton, plaintiff's son applied for jobs in that area and listed the Pendleton house as his address on the applications and his resume. On either the first or second weekend in April, plaintiff's son returned to the house with most of his belongings, although he left his clothing where he was living with plaintiff in Portland because he had not yet obtained other employment. After staying in the house for the weekend, he returned to Portland. Neither he nor his mother had any contact with the house thereafter. A fire caused by faulty wiring destroyed the house on May 30, 2001.

Plaintiff made a claim for the loss under her insurance policy that defendant denied because the house was unoccupied for more than 60 days before the fire. The policy includes an exclusion for coverage that suspends or restricts insurance coverage when there is an increase in the hazards insured against. The exclusion from coverage provides, in relevant part:

> "As provided in this policy, the Company shall not be liable for loss occurring * * * while a described building, whether intended for occupancy by owner or tenant, is

vacant or unoccupied beyond a period of sixty consecutive days[.]'"

Plaintiff filed a complaint for breach of contract seeking damages for the amount of her loss. Plaintiff and defendant each sought summary judgment arguing, respectively, that as a matter of law the house was or was not "occupied." In a well-reasoned opinion, the trial court concluded that the policy exclusion applied because, as a matter of law, "the house was unoccupied at the time of the fire and for at least sixty days beforehand." We reach the same conclusion.

The only question on appeal is whether the house was "unoccupied beyond a period of 60 consecutive days." In light of the date of the fire, the only contact with the house during the pertinent time involved plaintiff's son staying there on the first or second weekend of April. We must consider the meaning of the terms and conditions in the policy as they were intended by the parties. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). The policy itself does not define the term "unoccupied." However the language in the policy contains the current statutory language required by ORS 742.216. That statute provides, in relevant part:

> "A fire insurance policy shall contain a provision as follows: 'Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring:
>
> " '* * * * *
>
> " '(2)   While a described building, whether intended for occupancy by owner or tenant, is vacated or unoccupied beyond a period of 60 consecutive days[.]' "

Where language appears in the contract because the legislature requires it, we must necessarily determine the meaning intended by the legislature. *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 244-45, 855 P2d 626 (1993).

ORS 742.216 contains almost the same language that the legislature enacted in 1907. The relevant portion of that law provided that insurance policies contain the following language:

> "This entire policy * * * shall be void * * * if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

Lord's Oregon Laws, title XXXIV, ch VI, § 4666 (1910). That language was in effect when the Supreme Court decided *Schoeneman v. Hartford Fire Ins. Co.*, 125 Or 571, 267 P 815 (1928). As the trial court in this case explained:

> "Oregon standardized fire policies in 1907. A law passed then and continued to the present forbids fire insurers to issue policies that do not contain—verbatim—certain prescribed terms. *See* ORS 742.202. The exclusion at issue here is one of those prescribed terms, *see* ORS 742.216, and it has been part of the 'standard' fire policy since *Schoeneman* was decided. For that reason, I give *Schoeneman* great weight. If the legislature had been dissatisfied with that ruling, it could have done something about it. The standard policy is, in effect, a creature of statute. The legislature could 'rewrite' it at any time, but hasn't."

In fact, any prior judicial construction of the same language in a statute by the Supreme Court becomes part of the statute, as if it were written into the statute at the time of the statute's enactment. *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995).

In *Schoeneman*, the insured left his farmhouse and rented dwellings in Dallas and Independence while pursuing his trade as a butcher in those cities. However, he visited his farmhouse on an almost weekly basis. The farmhouse burned, and the insured made his proof of loss, but the defendant insurer invoked a policy exclusion that required the insured premises to be occupied for a time period before the loss occurred. The Supreme Court reversed the award of damages by the trial court after the plaintiff sued on his policy. The court explained:

> "A generally accepted and concise definition of the term 'occupancy' is thus stated in Anderson's Dictionary of Law:
>
> > " 'Occupation of a dwelling house, within the meaning of a policy of insurance, requires that there be in the house the presence of human beings as at their customary

place of abode, not absolutely and uninterruptedly continuous, but the house must be the place of usual return and habitual stoppage.' "

125 Or at 573-74. The court also quoted from 2 Cooley, Briefs on the Law of Insurance, 1666:

"A dwelling is occupied when it is in actual use by human beings who are living in it as a place of habitation. Bearing in mind the distinction between 'vacant' and 'unoccupied,' and the qualification * * that a house may be unoccupied, and yet not be vacant, it may be said that, in a general sense, a dwelling is 'unoccupied' when it has ceased to be a customary place of habitation or abode (numerous citations, including *Weidert v. State Ins. Co.*, 19 Or. 261, 24 Pac. 242, 20 Am. St. Rep. 809). This principle does not imply that there must be some one in the house constantly, or that it must be occupied by a family, or that it must be put to all the uses to which a dwelling is usually put. The only essential is that it is the usual place of abode (citations). * * *

"Consequently, if the house is not actually occupied, the requirement is not satisfied by the frequent visits of the owner or some other person whom he has employed for such purpose (citations)."

*Id.* at 575 (additions and omissions in original).

Applying that understanding of the meaning of "unoccupied" to the facts of this case, we conclude that plaintiff and her son never "occupied" the Pendleton house because it never became their customary or usual place of habitation or abode. Nor is it sufficient under ORS 742.216 and the policy that plaintiff's son intended and understood the Pendleton house to be his residence. Plaintiff argues that we should distinguish "visits," as discussed in *Schoeneman*, from the process of plaintiff's son "moving in," which plaintiff equates with the act of occupying. However, regardless of how the stays in Pendleton are characterized, the house was not in actual use *by a person* using it *as his usual place of habitation*. Therefore, the house was unoccupied at the time of fire and the 60 days before the fire within the meaning of the exclusion from coverage.

Affirmed.