MONGER v. NEW ERA ASSOCIATION.

1. JUDGMENT—RES JUDICATA—INSURANCE—APPEAL AND ERROR.
   Where defendant, in an action on a mutual benefit policy, offered evidence of a by-law, passed subsequent to the issuance of the policy, but by its terms affecting the rights of the beneficiary, and requiring plaintiff to exhaust his remedy in the tribunals of the order, whose judgment should be final, and where the trial court held that the defendant had waived the effect of such by-law by refusing on other grounds to recognize any claim under the policy, but the judgment was reversed and the by-law held to be a part of the contract on appeal, the judgment of the Supreme Court was *res judicata* on the trial of a new suit between the defendant and plaintiff's administrator as to the objection that the subsequently enacted by-law was not shown to have been legally adopted: the effect of such by-law having been determined in the first action on the policy, and the evidence being identical in both cases, the court will not consider the point a second time upon a new set of objections.

2. INSURANCE—MUTUAL BENEFIT POLICY—FRAUD—JUDGMENT.
   After pursuing his remedies in the tribunals of the fraternal beneficiary association, plaintiff could not, in the absence of

fraud, attack their adverse determination by an action on the policy, which by its terms prohibited suits against the society by its members.

3. SAME—FRATERNAL SOCIETIES—LIFE INSURANCE.
Where the by-law of the association was proved from its records, and oral testimony was introduced tending to show that the society duly enacted the by-law, which was thereafter treated as in force and circulated among the members, and filed with the insurance commissioner, the fact that the names of defendant's officers instead of being signed were printed and pasted in the official record with the printed by-law, did not render the evidence incompetent and it sufficiently proved the enactment of such by-law.

4. SAME.
The decision of this court in the case of *Monger* v. *New Era Ass'n*, 156 Mich. 645 (121 N. W. 823, 24 L. R. A. [N. S.] 1027), *held*, conclusive as to plaintiff's rights.
MOORE, C. J., and BIRD, J., dissenting.

Error to Berrien; Coolidge, J. Submitted April 12, 1911. (Docket No. 100.) Decided October 1, 1912.

Assumpsit by Joseph Monger, administrator of the estate of Maria Monger, deceased, against the New Era Association upon a benefit certificate. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*Kleinhans & Knappen*, for appellant.

*John J. Sterling* (*William C. Hicks*, of counsel), for appellee.

OSTRANDER, J. The assignee of the beneficiary in a benefit certificate issued by defendant upon the life of Llewellyn Monger recovered a judgment thereon in the circuit court for the county of Berrien, which judgment this court reversed. Later a rehearing was denied. *Monger* v. *New Era Ass'n*, 156 Mich. 645 (121 N. W. 823, 24 L. R. A. [N. S.] 1027). In that suit the defendant gave notice with its plea that it would give in evidence and insist in its defense:

" (3) That the benefit certificate issued to the said Llewellyn Monger, if in fact issued, was issued subject to all the conditions of the constitution and laws of defendant association, and liable to forfeiture if said member did not comply with the said conditions, constitution, and laws and such as might thereafter be legally enacted by this association; and that the application made by the said Llewellyn Monger for membership in defendant association, and for the issuance of a benefit certificate provided:

" 'I do hereby consent and agree that this application in all its parts, together with the laws of said association now in force and those that shall hereafter be legally enacted, shall form the sole basis of admission to a membership in said association.'

" That in the constitution and laws of defendant association at the time of the alleged death of the said Llewellyn Monger, and at the time of the commencement of this suit, was the following provision, namely:

" 'The cabinet shall have power to pass on all death claims or other claims, and if, in its judgment, any such claim is not on its face a valid one, it shall notify the beneficiary or beneficiaries of the deceased member thereof, and give them or their attorney, an opportunity to appear before the cabinet within sixty days thereafter, and present such evidence as they may have to establish the justness or validity of such claim, and such decision shall be final on such claimant unless an appeal is taken to the senate. The notice of the appeal from the decision of the cabinet to the senate must be filed with the general secretary within thirty days thereafter, and no suit at law or in equity shall be commenced or maintained by any member or beneficiary against the association.'

" That the foregoing provision of the laws of defendant association became, and was, a part of the contract made by and between the said Llewellyn Monger and defendant association, if, in fact, any contract was made. That since the alleged death of the said Llewellyn Monger, the beneficiary in said benefit case, if in fact issued, or the plaintiff in this case, have neither of them filed with the cabinet of defendant any death claim, or other claim, although the cabinet of defendant has at all times been ready to receive and pass upon any claim arising out of the death of the said Llewellyn Monger, if any. And that by and on account of the laws of defendant association, as aforesaid, and by the contract, if any, made between the said Llewellyn Monger and defendant, the bene-

ficiary in said benefit certificate, if issued, or any assignee thereof, including the plaintiff in this case, has no standing in this court, and could not and cannot commence a suit at law or in equity against defendant association on account of any benefit certificate whatever."

Pursuant to this special notice of defense, the defendant upon the trial produced and offered in evidence testimony tending to prove that no claim on account of the death of Llewellyn Monger was ever brought before the New Era cabinet by any person; that no action had ever been taken by the New Era cabinet upon a claim arising upon the death of Llewellyn Monger. It also produced as a witness the general secretary of the defendant, New Era Association, who testified that he had been general secretary since the association was organized in October, 1897. He produced and identified a book, which he testified was the official journal of the meetings of the governing bodies of the New Era Association. This record, or certain parts or portions of it, was offered and received in evidence. The record purported to show a by-law adopted by the said association, amending the laws of the association, corresponding with the one noticed and set out in the plea of the defendant. The parties having rested, the defendant requested the court to instruct the jury that, under the constitution and laws of defendant in force at the time of the death of Llewellyn Monger, and up to the time of the commencement of the suit, it was the duty of the beneficiary under the certificate and of her assignee, the plaintiff, to offer proof of the claim to the cabinet of defendant; that the laws provided machinery for hearing and passing upon all claims against defendant growing out of deaths and for proper appeal, and that no suit should be brought upon a certificate in any court except the courts of the defendant as constituted; that this agreement was valid and binding; that neither the beneficiary nor plaintiff ever filed any claim with the cabinet or asked for a hearing before that body; that therefore the verdict should be no cause of action. This instruction

was refused.    Defendant moved for a new trial, in decid-
ing which the learned trial judge said, among other
things:

"Counsel for defendant contends that it was the duty
of the beneficiary to take her claim before the courts of
the defendant order as required by its constitution and
laws, and that for this reason she has no standing in a
court of law.    *    *    *    My opinion is that in this case
the operation of the rule requiring the beneficiary to pro-
ceed in the tribunals furnished by the association, and not
to proceed in the civil courts of the State, was waived by
the action of the secretary on the ground that the com-
pany refused to take any action in the premises."

The refusal to instruct the jury as so requested, and the
refusal of the trial court to direct a verdict upon that
ground at the close of the trial, were assigned as error in
this court.    The point was made in the brief for appellant
in this court and the subject of the effect of the said by-
law was elaborately presented.    The appellee in her brief
in this court argued that this by-law was waived because
defendant denied all liability.    It was further contended
in her brief that the by-law was unconstitutional and void;
that it was unreasonable and unfair, and these contentions
were somewhat elaborately presented to the court with
citations of authority.    It was not suggested that the by-
law had not been properly adopted.    There was no inti-
mation of an objection to its validity, based upon the fact
that it appeared in the record of the defendant in printed
rather than in written form, and was not in the record
identified or attested by the written signatures of officers.
In its opinion this court said:

This court is asked to reverse this judgment, principally
upon the ground that plaintiff, before resorting to her suit
at law, did not have her claim adjudicated in the properly
constituted tribunals of the order, and that the court erred
in refusing to so charge the jury, and in refusing to in-
struct a verdict for defendant.    Upon the facts which
bear upon this proposition there appears to be little or no
dispute."

After reciting some of the documentary evidence, the opinion proceeds:

"The language of the laws of defendant's association at the time of Mr. Monger's death was practically identical with the laws of other fraternal benefit orders, as to the tribunals established, and the mode of procedure for adjudicating claims, which have several times been considered by this court. The record shows that neither the beneficiary nor the claimant made any further attempt to bring this claim before the tribunals of the order. Unless we can hold that the action of the general secretary was a waiver of the laws of defendant, or a rejection and denial of her claim, the contention of defendant must be held good. * * *

"Counsel for plaintiff do not dispute the legality of a contract wherein the member has agreed to be bound by future legally-enacted laws. They, however, insist, by cogent argument, that no change which deprives a member of a vested right, or which is unreasonable, can be said to have been legally enacted, which, applied to the case at bar, means that the right which this member had at the time he was admitted to proceed in the civil courts to enforce any claim under his certificate was a vested right, of which he could not be deprived by subsequent enactment."

After stating reasons for sustaining the contention of the appellant and denying those of the appellee, it was said:

"Our conclusion is that this after-enacted legislation was reasonable; that it pertained to, and was within the authority of, the organization to enact; that it did not deprive this member of any vested right. It was binding upon him and his beneficiary, and within the terms of his voluntary agreement with the association. Therefore this claim should have been submitted to the tribunals established by the association."

The judgment was reversed, with a provision for a new trial. The suit was discontinued. The plaintiff therein died. Her administrator, plaintiff in the case now presented, filed a claim before the cabinet of the defendant pursuant to its laws. It was heard in December, 1909,

and disallowed. Plaintiff thereupon appealed to the senate in accordance with defendant's laws, and in February, 1910, the claim was again disallowed. Thereupon plaintiff, as representative of the former plaintiff, now deceased, began this suit, upon the same certificate, for the same demand. The defendant under its plea again gave notice of the special matter of defense hereinbefore referred to, and, in addition thereto, that plaintiff's intestate brought her action for the said debt or cause of action in the declaration mentioned, and that such proceedings were had that it was considered by the final judgment of this court that the said Maria Monger, plaintiff's intestate, should take nothing by her writ in respect to the said debt or cause of action as by the records of the said court appears, and defendant prayed judgment if the plaintiff ought to be admitted to say that he is entitled to bring this suit against this defendant. Upon the trial, defendant's record book which has been referred to was again produced and offered in evidence, and it was then and is now objected to the record of proceedings taken in the course of the adoption of said by-law that the matter of such proceeding and the signatures were in printed form and pasted in the book and not attested by signatures of proper officers written upon the book; that, therefore, the record was questionable. No such objection was raised at the first trial. The trial court excluded that portion of the record as not sufficiently proved. Concerning the book and record itself, it is said in the brief for appellee that at the end of the trial:

"A new and hitherto unknown record was introduced. * * * This was the first time it was ever offered in evidence during this long litigation."

Reference to the records establishes the fact that the same pages of the same record were introduced upon both trials. There is, and can be, no doubt about the matter. It is said in the opinion of Mr. Justice BIRD:

"This by-law was made a direct issue by the pleadings.

It was an important element in the case to both parties because if established it seriously affected the plaintiff's right of recovery. Under such circumstances, the record of its enactment should have been established by evidence which would have left little room for doubt of its authenticity. Beyond the fact that the by-law is found in the record book of the association, there is little to prove its authenticity. * * * We think the trial court was right in excluding the law upon the ground that it had not been properly proved."

In my opinion, the matter was disposed of by the opinion and judgment of this court, and is *res judicata.* By that opinion and judgment plaintiff was denied the right to enforce this demand in the courts of the State and was relegated finally and irrevocably to the tribunals of the defendant order.

I express a further ground of dissent, namely, that the plaintiff in this action, pursuant to the judgment of this court, presented the demand in the courts of the defendant order. He is not permitted to take the judgment of those tribunals, and thereafter, the judgment being adverse and no fraudulent conduct charged or relied upon, pursue his remedy in the courts of the State.

It is true that the judgment of this court reversed the judgment of the lower court and that no other judgment determinative of the rights of the parties was thereafter entered. But the judgment of this court was conclusive upon the subject of the binding effect of the particular law upon the certificate holder and his beneficiary upon that record. It is equally conclusive upon this record.

"Verdicts and judgments are conclusive evidence of the facts which they profess to find and which are necessary to uphold them, because those facts were properly in issue, were the subject of inquiry, and were upon such inquiry judicially determined. But in regard to facts about which the court could have made no inquiry, no inference can be drawn from its determination." *Dickinson* v. *Hayes*, 31 Conn. 417, cited with approval in *Jacobson* v. *Miller*, 41 Mich. 90, 98 ( 1 N. W. 1013, 1018).

See, also, *Bond* v. *Markstrum*, 102 Mich. 11 ( 60 N. W. 282); *Hall* v. *City of Kalamazoo*, 141 Mich. 503 ( 104 N. W. 689). I do not intimate that when the judgment of a trial court is reversed by this court, and a new trial granted, upon a new trial testimony other than, different from, or in addition to, that offered on the first trial may not be admitted and have the effect of requiring a wholly different determination of the fact or facts in issue. No such case as the one suggested is presented. The testimony in the case now presented is the same as that presented upon the former trial so far as the particular fact involved in the judgment of this court is concerned. In effect, this court is asked to consider the same record a second time, in view of a new set of objections. Upon this record, upon the other appeal, plaintiff was advised that his only remedy was through the tribunal established by the laws of defendant association. The result must be the same now.

While I regard it as immaterial, it is not improper to say that I find abundant evidence of the proper inception, passage, and approval of the law of defendant which requires such demands as plaintiff's to be presented to and determined by the special tribunal, and I am of opinion that the trial court should have held that it was established. The record was authenticated, generally, the printed portions appearing on certain pages pasted into the book included the printed signatures, or names, of proper attesting officers. That such action as the printed matter purports to record was in fact taken was shown by oral testimony, and was not disputed. The law was published, circulated, and treated as in force. It was filed with the commissioner of insurance.

Some question is made by appellee of the effect of our previous decision; *i. e.*, whether it was meant that submission of the demand to the special tribunal was conclusive of plaintiff's right, or merely preliminary to action in the courts if unsatisfactorily concluded. Cases cited in the former opinion would seem to leave no doubt upon the

subject (*Fillmore* v. *Great Camp K. O. T. M.*, 103 Mich. 437 [61 N. W. 785]), and the opinion itself clearly shows that this court was dealing with a law of the association passed after the certificate holder became a member thereof.

The judgment should be reversed, and no new trial ordered.

STEERE, McALVAY, BROOKE, and STONE, JJ., concurred with OSTRANDER, J.

BIRD, J. (*dissenting*). Llewellyn Monger became a member of the defendant association on September 1, 1900, and a benefit certificate was issued to him for $1,000. When he became a member of the association, he resided at Benton Harbor, in this State, but subsequently removed to Waterville, Wash., where he died in March, 1905. The association refused to pay on the ground that at the time of the death of Llewellyn he was suspended from the association for his failure to pay a special assessment payable in July, 1904. Suit was commenced and judgment by default was taken by the plaintiff. Subsequently this court set aside the judgment on jurisdictional grounds. 145 Mich. 683 (108 N. W. 1111). Suit was again commenced and resulted in a judgment for plaintiff. This judgment was also vacated by this court for the reason that, under the amended laws of the order, it was the duty of claimant to file and present her claim to the cabinet of the order. 156 Mich. 645 (121 N. W. 823, 24 L. R. A. [N. S.] 1027). The claim was then presented to the cabinet and rejected. An appeal to the senate was taken and a like result reached. Another suit, the present one, was then begun to recover upon the certificate, and, after a trial on the merits, the court directed a verdict for the plaintiff. The important questions raised by the defendant are: (1) Did the trial court have jurisdiction? (2) If it did have jurisdiction, was Llewellyn Monger legally suspended from membership at the time of his death?

1. Did the trial court have jurisdiction? It appears that, after Llewellyn Monger became a member of the association, the laws of the order were amended, creating a tribunal within the order to determine the differences arising between the association and its members, and providing that the decision of the tribunal should be final and conclusive. It is claimed this law was enacted in December, 1901. It was offered in evidence, and, for the purpose of laying the foundation for its reception, defendant's counsel produced a book which was identified by the general manager as the record book of the association. At pages 83 and 84 of the book there appeared what purported to be the minutes of a special meeting of the senate, at which the law in question was enacted. The entire proceedings of this meeting, save the date, including the signatures of the president and secretary, were in printed form and pasted in the book. It was further shown by the general manager that the minutes of this meeting were originally in typewritten form, that he assisted the secretary in getting them ready for publication to be sent to the members, and in so doing he personally read over the laws and the secretary verified them with the original resolution. The record was objected to by the plaintiff because not sufficiently proved. The trial court agreed with the plaintiff, and at the close of the trial excluded the record. In view of the former opinion of this court, this law was an important element in the case to both parties, because, if established, it seriously affected the plaintiff's right of recovery. Under such circumstances, the record of its enactment should have been established by evidence which would have left little room for doubt of its authenticity. Beyond the fact that the law is found in the record book of the association, there is little to prove its authenticity. The general manager testifies that he assisted in preparing the minutes for publication to send to the members, but he does not say that the copy which was pasted in the book was a correct copy of the original typewritten ones. There was no

showing that the record at that time was in his possession, nor that it was ever in his possession, nor that he was familiar with it, nor how it was kept. There was no showing by whom the minutes were pasted in the book and there was no handwriting, nor signatures, from which it could be inferred that it was the work of the secretary. Neither was there any showing by any one who knew that such a law was ever enacted by the senate. Minutes of other meetings, which appeared in the record book and were admitted in evidence, were signed by the autograph signature of the secretary; but why it did not appear at the close of these minutes is not explained.

In *Herman* v. *Supreme Lodge Knights of Pythias of the World*, 66 N. J. Law, 77 (48 Atl. 1000), it was sought to defeat the payment of a certificate by an after-enacted by-law. The by-law was offered and rejected by the trial court. In passing upon whether the by-law was properly rejected by the trial court, the appellate court said, in part:

" The only attempt at proof of the alleged law of 1896 was by a printed pamphlet purporting to be the constitution and general laws of the endowment rank of the order, which was excluded as evidence because not proved. One Charles Marks, the secretary of the local New Jersey section of that rank, was shown this pamphlet, and asked whether or not it contained the rules and regulations of the Order of Knights of Pythias in force April 11, 1899, and, upon due objection, the question was overruled. A similar question, propounded to Elmer E. Margerum, who said he was grand keeper of records and seals of the State of New Jersey of the Knights of Pythias, was overruled. No other evidence on the subject was offered.

" In *Downie* v. *Passaic County*, 54 N. J. Law, 223 [23 Atl. 954], this court held that a by-law of the board of chosen freeholders was not proved by the use at a trial of a printed book containing it and purporting to be, ' the by-laws of the Board of Chosen Freeholders of the County of Passaic,' and that such book would have been inadmissible in evidence. It is too plain for argument that, in order to vary an existing contract, strict proof of the enactment of a law claimed to have such effect is requisite.

171 Mich.—40.

Proof by members of the order that copies of what purported to be the laws extant had been promulgated could not legally stand in lieu of direct proof of such enactment."

It was said in *Highland Turnpike Co.* v. *M'Kean*, 10 Johns. (N. Y.) 154 (6 Am. Dec. 324), where a like question was under consideration, that—

"The general rule is (and it is a rule of evidence essential to public convenience), that corporation books are evidence of the proceedings of the corporation, but then it must appear that they are the corporation books, and that they have been kept as such, and the entries made by the proper officer, or some other person in his necessary absence."

See, also, 17 Cyc. p. 403. We think the trial court was right in excluding the law upon the ground that it had not been properly proved.

2. Was Llewellyn Monger legally suspended from membership at the time of his death? It is contended by the defendant that in June, 1904, a special assessment was levied by the senate, payable in July; that notice of this special assessment was mailed Llewellyn Monger at his last known address at Waterville, Wash.; that under the rules of the order Monger had all of the month of July to make payment, and, as one month must elapse after that before he could be suspended, he would have all of the month of August in which to make payment; that he failed to respond within that time and by reason thereof was automatically suspended from membership on September 1, 1904.

The plaintiff denies that under the rules of the order he could be suspended at that time, because it was admitted that on October 23, 1903, the assured paid in advance 12 assessments. The receipt given by the association at that time shows that this payment would pay all regular assessments up to and including September, 1904. Plaintiff says that one of these assessments should have been applied on the special assessment. Then the special assessment would have been paid and the regular assessments

would have been paid up to and including August, 1904.
For the nonpayment of the September assessment he could
not have been suspended until November 1, 1904. Before
that date and on September 15th, the father of the in-
sured tendered to the company $5.80 more for future
assessments (and this tender is admitted in the record),
and was refused by the defendant. The whole difficulty
apparently lies in the fact that the association suspended
the insured for nonpayment of a special assessment while
it had money in its hands belonging to him not yet applied
to regular assessments. We do not think the association
was justified in crediting the whole amount to regular
assessments to the exclusion of special assessments, as the
record does not show that, when the advance payments
were made, the insured elected to have it applied solely to
regular assessments. If he did not, then it was the duty
of the association to apply one of these advance payments
on the special assessment to rescue him from suspension.
We think the trial court was right in holding that the
insured was not suspended at the time of his death.

It is further insisted by the defendant that the reversal
of the former judgment by this court is *res adjudicata*
of the present one. In the former case, the plaintiff re-
covered upon the merits in the trial court. This court re-
versed that judgment, and ordered a new trial. Subse-
quently that case was discontinued in the trial court, and
the claim was presented to the tribunal of the order in
accordance with the holding of this court. There the
claim was rejected. Then the present suit was begun.
On the former appeal to this court, several questions were
presented, but only one was passed upon, and that one
was the validity of such a law, which appeared to have
been enacted by the defendant order with reference to
death claims. This law was held to be valid and binding on
the insured, and that it had not been waived by the de-
fendant. The question as to whether such a law had ever
been legally passed was not raised. The validity of the
law, and not its existence, was the question determined.

The question of the validity of the law raised a jurisdictional question. If it were valid, then the trial court had no jurisdiction to entertain the case. In determining this jurisdictional question as it did, this court held, in effect, that the suit was prematurely begun. Judgments rendered in suits prematurely brought are no bar to subsequent ones on the same claims. *Gray* v. *Dougherty*, 25 Cal. 266; *Peck* v. *Easton*, 74 Conn. 456 (51 Atl. 134); *Williams* v. *Lewis*, 124 Ind. 344 (24 N. E. 733); *Seaton* v. *G. C. Hixon & Co.*, 35 Kan. 663 (12 Pac. 22); *Oleson* v. *Merrihew*, 45 Wis. 397; *Harrison* v. *Insurance Co.*, 102 Iowa, 112 (71 N. W. 220, 47 L. R. A. 709); *McNees* v. *Insurance Co.*, 69 Mo. App. 232; *Franks* v. *Fecheimer*, 44 Mich. 177 (6 N. W. 215). The parties, therefore, came up to the last trial with but one question judicially settled, and that was the validity of such a law as the defendant claimed to have passed. The reversal of the former judgment left all other questions open. 24 Am. & Eng. Enc. Law, p. 812, and cases cited. If, then, the defendant could establish that it had such a law as it claimed to have enacted, that would put an end to the controversy. It made the attempt and failed because of its defective records, and it is now in the same situation as though it had never made the attempt to establish it. Suppose defendant had neither pleaded the existence of the law nor made any attempt to prove it; could it now be reasonably argued that the former decision of this court was a bar to a recovery in this one? Obviously counsel thought it was necessary, not only to plead, but to prove, the existence of the law as a part of his case. If it were necessary, it would follow that plaintiff had a right to contest it. The defendant's proof having been deficient on this issue, we think the trial court was right in his conclusion.

It is further contended by defendant that it had a right to have the question of the waiver of Monger's membership and his acquiescence in his suspension submitted to

the jury.   We think the trial court was right in holding that, under the testimony, no question of fact was made out for the jury.

The judgment of the trial court should be affirmed.

MOORE, C. J., concurred with BIRD, J.