[No. 22879. Department Two. April 8, 1931.]

ALTON COLLINS, *Appellant*, v. LUMBERMENS INSURANCE COMPANY OF PHILADELPHIA, *Respondent*.[1]

*John Wilkinson*, for appellant.
*Chas. W. Johnson*, for respondent.

[1]Reported in 297 Pac. 748.

BEALS, J.—This action was brought for the purpose of recovering judgment upon two policies of fire insurance issued by respondent to A. F. Garrison; one policy insuring personal property in the sum of twenty-five hundred dollars; the other having been written in a like amount on the building in which the furniture was located. Plaintiff sued upon these policies, claiming to be entitled to recover thereon (the property insured having been damaged by fire), first, as assignee of A. F. Garrison and A. J. Gump, and also, as assignee of United Artisans Life Assurance Company, which is named in both policies as mortgagee. Plaintiff also contends that defendant is estopped to deny liability on the policies, in so far as plaintiff's claim thereon is concerned, because of the acts of defendant and its agent subsequent to the date of the fire.

The following is a brief statement of the facts leading up to this controversy: For some time prior to July 16, 1928, A. F. Garrison was the owner of a four story brick building in the city of Vancouver, Washington, together with the furniture therein, known as the St. Francis Hotel, upon which real estate there was a first mortgage securing a note in the sum of twenty thousand dollars in favor of United Artisans Life Assurance Company (hereinafter referred to as Artisans Co.) Whether or not the Artisans Co. had any claim to or lien upon the hotel furniture, does not appear. At the date above referred to, the building was insured in a considerable amount against loss by fire, the policies being in the possession of the Artisans Co., as mortgagee. Whether or not these policies, or any policies, save the one above referred to issued by defendant, covered the furniture, we are not advised.

Messrs. Homann and Wineberg, real estate and insurance brokers, maintained an office off the lobby of the hotel, and, according to the testimony introduced

by plaintiff, Mr. Garrison and one A. J. Gump, to whom Mr. Garrison was selling or trading the property, on the 16th day of July called on Messrs. Homann and Wineberg, explaining to them that Mr. Garrison was selling the property to Mr. Gump, and that, as part of the transaction, five thousand dollars of additional fire insurance was to be written, half on the building and half on the furniture, for the protection of Mr. Garrison, who was taking a second mortgage on the property as part of the consideration for the transfer. The policies were made out in favor of A. F. Garrison and Blanche N. Garrison, as owners, each bearing a mortgage rider in favor of the Artisans Co. The premiums on the policies were paid, and the policies were delivered, being later turned over to the agent of the Artisans Co. at his Portland office.

On the date the policies here sued on were issued, the record title to the property was apparently still vested in Mr. Garrison, who died prior to the trial. Mr. Gump testified, and plaintiff contends that the evidence shows, that the deal between Messrs. Garrison and Gump had been concluded, but that the papers necessary to effect the transfer had not all been signed, because of delay in obtaining the signatures of some of the parties. The mortgage from Mr. and Mrs. Gump to Mr. Garrison is in evidence, bearing date July 14, 1928, and having been filed for record August 7th following. This mortgage, according to its terms, covers both the real estate and the hotel furnishings, but it bears no affidavit of good faith, nor was it filed as a chattel mortgage.

As above stated, the insurance policies here sued upon were issued July 16th. The deed from Mr. and Mrs. Garrison to Mr. Gump is not in evidence, but from Mr. Gump's testimony it is evident that the same was executed and delivered after July 16th. Mr.

Gump testified that he and Mr. Garrison explained to Messrs. Homann and Wineberg (neither of whom testified at the trial) that he, Mr. Gump, would be the new landlord, and was purchasing the property. Mr. Gump's testimony is in many particulars vague and indefinite; as to several matters, he stated that his recollection was not clear, and it is evident that he at times became confused.

We are satisfied that from his testimony it appears that the true situation was explained to Messrs. Homann and Wineberg, and that they, therefore, had knowledge that the title to the property had not, on the date the policies were ordered and written, formally passed from the Garrisons to Mr. Gump. It is clear that such was the fact, and, whatever the situation actually was as between Mr. Garrison and Mr. Gump, and whether or not a contractual relationship existed between them which would have enabled either one to enforce specific performance as against the other, it is manifest that the closing of the deal and actual delivery of the deed and mortgage took place after July 16th.

The sale to Mr. Gump was in due time completed, and Mr. Garrison's interest in the property became that of a second mortgagee. No further notice of change of title was given to defendant, and the insurance policies remained as written in the custody of the Artisans Co.

During the fall of 1928, Mr. Gump conveyed or agreed to convey the hotel property to Robert LeFebvre in consideration of the conveyance of some Canadian lands. At this time, Mr. and Mrs. Gump executed a deed to the property, no grantee being named therein, which deed, together with an assignment of the insurance policies and other papers, was placed in escrow in a bank in the city of Vancouver,

Washington, together with a contract, according to the terms of which parties named Hardison and O'Harra had the right to purchase the property under a contract of conditional sale, their rights to be forfeited unless certain payments specified in the contract were made.

Mr. LeFebvre, as vendor in the contract of conditional sale running to Hardison and O'Harra, by an instrument dated January 26, 1929, assigned his rights in this contract to plaintiff, who, when Messrs. Hardison and O'Harra failed to comply with the terms of their contract, served upon them a notice of forfeiture, took the papers out of the escrow, inserted his own name as grantee in the deed executed by Mr. and Mrs. Gump, filed the deed for record (February 15, 1929), and sometime thereafter took possession of the property.

Assignments of insurance policies, which plaintiff's testimony indicates were executed by Mr. Gump, were not delivered to plaintiff, and were apparently lost or destroyed at the time the papers were withdrawn from the escrow. Testimony introduced on behalf of plaintiff was to the effect that these assignments had been approved by agents of the insurance company.

Sometime after plaintiff became the owner of the property, several of the insurance policies thereon expired, and plaintiff took out in his own name, as owner, other and additional insurance thereon, in the total sum of thirty-five thousand dollars on the building and five thousand dollars on the contents, which was written by the Commerce Insurance Company of New York, the policies bearing a rider showing that they were payable to the Artisans Co. as mortgagee, the policies being turned over to that company.

March 16, 1929, the hotel building was seriously damaged by fire, most of the personal property therein

being ruined by fire or water. Very shortly after the occurrence of the fire, one Patterson appeared in the city of Vancouver and informed Mr. H. S. Fry, who had written the insurance on the property for plaintiff, that he was to adjust the loss for defendant. Mr. Patterson assumed charge of the property, roped it off, locked the doors, sent some of the personal property to cleaning establishments for renovation, and in a few days, when the adjuster for the Commerce Insurance Company appeared with the adjuster for that company, took estimates from contractors as to the cost of repairs, and conferred with plaintiff concerning the loss.

Plaintiff states that after about two weeks Mr. Patterson informed him that the defendant company would require formal proofs of loss, and that he had been relieved from further duty in connection with the adjustment. Blank forms for the making of proof of loss were at this time furnished plaintiff by Mr. Patterson. The proofs were prepared and seasonably submitted to defendant's agent, plaintiff contending that in making up the proof of loss, he was put to considerable expense.

March 29, 1929, A. F. Garrison assigned to plaintiff his interest in the two policies sued upon, as well as all of his "right on account of loss due under said policies, except my right to have said loss payments applied to the mortgage now due me if any;" April 26th the Artisans Co. assigned to Truman W. Collins (whose certificate, to the effect that he received this assignment and that from Mr. Garrison, hereinafter referred to, as trustee for plaintiff Alton Collins, appears in the record) the twenty thousand dollar note and mortgage, above referred to; and April 25, 1929, A. F. Garrison assigned to Truman W. Collins the note and mortgage from A. J. and Nancy A. Gump, in

the sum of $5,436, dated July 14, 1928, given as part of the consideration for the transfer of the property from the Garrisons to Mr. Gump.

The Commerce Insurance Company adjusted its loss with plaintiff, treating all of the insurance on the property as concurrent insurance, and paid the plaintiff its proportionate share of the loss. Defendant, on the other hand, denied liability, whereupon plaintiff instituted this action.

The action was tried to a jury, and, at the close of plaintiff's case, the court granted a motion for a nonsuit interposed by defendant. From a judgment of dismissal rendered pursuant to this ruling of the trial court, plaintiff appeals.

In the first place, appellant assigns error upon the ruling of the trial court in granting respondent's motion for a nonsuit, and in denying appellant's motion for new trial. Appellant also argues that the trial court erred in refusing to allow the introduction of testimony offered on appellant's behalf; in allowing respondent to deny the existence of any contract of insurance and then permitting respondent to claim non-liability because of appellant's alleged failure to comply with the terms of the contract; and in allowing respondent to cross-examine appellant's witnesses upon matters which, appellant contends, were not relevant to the issues being tried:

We think that from the evidence, for the purposes of this appeal, it must be taken as proved that Messrs. Garrison and Gump, at the time the two policies here sued upon were ordered, explained to the agents the true situation as to the ownership of the hotel property and furniture, and the transaction then pending between Mr. Garrison and Mr. Gump, and that the conveyances from Mr. and Mrs. Garrison had not yet been executed. This seems to us to be the only rea-

8

sonable construction to be placed upon Mr. Gump's rather vague and unsatisfactory testimony. Certainly, this testimony will not bear the construction that it was then stated to the insurance agents that the transaction had been completed; such was not the fact, and it seems clear that the parties were anxious only to tell the truth and explain the situation as it existed. Appellant seems to contend it was the wish of Messrs. Garrison and Gump that the policies be issued to Mr. Gump as owner, payable to the Artisans Co. as first mortgagee, and to Mr. Garrison as second mortgagee, but such policies would not, at the date of issue, have been in accord with the facts, and if a fire had occurred on the night of July 16th the insurer might well have resisted claims on the policies upon the ground that the ownership of the property was not correctly stated therein.

The policies contain the ordinary standard provisions to the effect that the agents writing them had no authority to waive any of the provisions of the policies without written endorsement thereon; that the policies shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstances concerning the insurance, or the subject thereof, or if the interest of the insured in the property was not truly stated therein. There are further provisions to the effect that the policies shall be void if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance.

Appellant, in support of his contention that the interest of Mr. Garrison as mortgagee was protected by the policies, cites the case of *Lindstrom v. Employers Indemnity Corporation*, 146 Wash. 484, 263 Pac. 953. From the opinion in the case cited, it appears that Mr. Lindstrom, who was purchasing an

automobile by contract of conditional sale, upon discovering that no collision insurance had been written on the car, requested the sales manager of the company from whom he was purchasing the machine to obtain for him full coverage. The manager applied to an insurance broker, who procured from the defendant in the action a policy of insurance protecting Mr. Lindstrom against damage to the car by collision. The insurance broker was not the agent of the insurance company, but in procuring the insurance was acting on behalf of Mr. Lindstrom. The application for the insurance was oral, and the testimony was in dispute as to whether or not the true condition of the title to the car had been explained to the insurance broker, or to the company which wrote the insurance. The policy was issued to Mr. Lindstrom as unconditional owner of the automobile, and, he having sued on the policy to recover for a loss occasioned by collision, the insurance company appealed from a judgment rendered upon the verdict of a jury in Mr. Lindstrom's favor. In the course of the opinion it is said:

"This court has always held, from the earliest times, that where no inquiry is made by the insurance company concerning the real title to the property involved, or where inquiry is made and truthful answers given by the applicant, which were not incorporated in the application or the policy, the sole and unconditional ownership clause of the policy is waived by the insurance company." (Citing authorities.)

This court affirmed the judgment appealed from, holding that there was competent testimony in the record which supported the verdict of the jury in Mr. Lindstrom's favor.

The case is not in point here. Appellant vigorously contends that the situation was truthfully and fully explained to the insurance agents by Messrs. Gump and Garrison, and we are of the opinion that

appellant's contention is correct. We are also of the opinion that the policy was correctly written in accordance with the facts as they were explained, and as they existed. It is not contended that the policies were to be held in escrow to take effect at some future date, but it appears that they were ordered to be effective as of the date of issue. This being true, we think it must be held from the record that the policies were correctly written.

The evidence is insufficient to support a finding that July 16, 1929, Mr. Gump had any insurable interest in the property. We are unable to determine from the evidence when the transfer from the Garrisons to Mr. Gump was completed, but the transaction cannot have been closed earlier than July 18th, as it is apparently conceded that the deed from the Garrisons to Mr. Gump was executed that day, and it may have been delivered at some later date. Granting that the policies here in issue were desired as part of the deal between the Garrisons and Mr. Gump, the insurer would still be entitled to notice of the completion of the transaction, so that appropriate riders could be added to the policies showing the ownership of the property as finally established.

Holding, as we do, that from the evidence it appears that the insurance policies here in question were correctly written in favor of Mr. Garrison as owner, it follows that, assuming for the purposes of argument that Mr. Gump could himself under the policies have made a *prima facie* case as to the existence of some rights in his favor against the insurer in case of a fire loss suffered while he was owner of the premises, no right on the part of anyone claiming by, through or under Mr. Gump could have survived Mr. Gump's sale of the property, and the transfer to plaintiff, concerning which no notice was given to the insurer.

Mr. Gump testified that he parted with his title to the property about the first of November, 1929, when the deed executed by Mr. and Mrs. Gump in blank was placed in escrow. It is evident that the deal then made was a three cornered proposition, and that the title to the property did not finally vest until appellant came into the picture in the following January. Whether the title remained in Mr. Gump or vested in Mr. Le-Febvre is not altogether clear, but is not important. There was, however, without question a transfer of the possession, and of rights affecting the property, of which the insurer was entitled to notice.

As we hold that because of the failure of the parties interested to have the change of ownership and the fact that Mr. Garrison had become a second mortgagee, noted upon the policies, Mr. Garrison never had any rights under the policies as second mortgagee, the assignment by him to appellant of his second mortgage and of his interest in the insurance policies avails appellant nothing.

Appellant relies also upon the assignment to him by the Artisans Co. of the twenty thousand dollar mortgage, that mortgagee being named as such in the policies. Upon this question, it is to be noted that it nowhere appears in the record that the Artisans Co. ever had any mortgage upon the furniture in the hotel, and consequently the statement in the policy covering the personal property, to the effect that the property was so mortgaged, was apparently incorrect, and the assignment of the real estate mortgage conveyed no rights to the insurance on the personal property. As to this policy, it is clear that appellant gained no rights by the assignment of the twenty thousand dollar mortgage on the real estate.

As to the policy of insurance on the building, appellant contends that the assignment to him by the

12

Artisans Co. of the twenty thousand dollar mortgage vests appellant with sufficient right in the policy to maintain this action. As to this phase of the case, appellant relies upon the provision contained in the "mortgagee clause," attached to the policy, to the effect that the insurance, "as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property . . . nor by any change in the title or ownership of said property." A later provision contained in the rider reads as follows:

"Any mortgagee, trustee or beneficiary under deed of trust who shall have or acquire knowledge of the commencement of any foreclosure proceedings, or of any notice of sale of any of said property under any mortgage or deed of trust, or of any change of ownership or occupancy or increase of hazard, shall forthwith notify this company thereof and, (if the same be not permitted by this policy) shall cause the consent of the company thereto to be noted thereon; and in the event of failure so to do, all rights of such mortgagee hereunder shall forthwith terminate."

It appears from the testimony that when, in the winter of 1929, appellant took out new policies of insurance upon his property, in the aggregate amount of forty thousand dollars, in which he was named as owner, the policies were delivered to the secretary of the Artisans Co. at its Portland office. The secretary, Mr. J. S. Sayler, testified that as such secretary he had charge of the accounting and records of the company. Respondent's counsel, on cross-examination, propounded the following question:

"Q. Mr. Sayler, what explanation can you make of the fact that you carried a policy of the Commerce Insurance Company covering this property for $40,000 that was written to Collins as owner and these $5,000 in two policies written to Garrison as owner. How do you explain that? A. It is unexplainable."

We are satisfied from the evidence that the Artisans Co. must be held in law to have had notice of the change of ownership of the property, and that, because of its failure to notify respondent of such change, and see to it that the policy issued to Mr. Garrison was corrected to show the situation as the same had developed after the issuance of the Garrison policy, its rights under this policy terminated, and the subsequent assignment of the mortgage avails appellant nothing.

It is probable that, for other reasons, appellant acquired no valid claim under this assignment, but no further discussion of this matter is necessary.

Appellant earnestly contends that because of the acts of Mr. Patterson, who undertook to adjust the loss on behalf of respondent, respondent is now estopped to deny its liability to appellant upon the policies. Generally speaking, it is the law that a fire insurance company must not demand proof of loss under a policy, if at the time it knows that it is going to deny liability upon the policy. We have carefully examined the record in connection with appellant's claim of estoppel, and fail to find therein any testimony, admitted or offered, which entitled appellant to go to the jury upon this phase of the case. The rule is not quite so strict as is contended for by appellant, and the evidence fails to bring the case within the rule laid down by the authorities.

Some other matters are argued by appellant, but in view of our holding, they need not be discussed.

The judgment appealed from is affirmed.

Tolman, C. J., Fullerton, Millard, and Beeler, JJ., concur.