**WEST AMERICAN INSURANCE COMPANY, an Ohio Corporation, Plaintiff,**

v.

**Justin L. HERNANDEZ and Daniela A. Hernandez, and Chase Home Finance, LLC, a New Jersey Corporation, Defendants.**

Civil No. 07–1447–AA.

United States District Court, D. Oregon.

Oct. 15, 2009.

Daniel E. Thenell, Kyle A. Sturm, Smith Freed & Eberhard, P.C., Portland, OR, for plaintiff.

R. Scott Taylor, Eugene, OR, for defendants Justin and Daniela Hernandez.

Bryant D. Tchida, Pro Hac Vice, Minneapolis, MN, David W. Axelrod, Anna M. Smith, Schwabe, Williamson & Wyatt, P.C., Portland, OR, for defendants Chase Home Finance, LLC.

## OPINION AND ORDER

AIKEN, District Judge:

On September 27, 2007, plaintiff West American Insurance Company filed a complaint seeking a declaration of its rights under a Homeowner's Insurance Policy ("the policy") it issued to defendant Justin Hernandez ("J. Hernandez"). Defendant Chase Home Finance, LLC, ("Chase") was a covered mortgagee under the policy. Plaintiff contends that under the terms of the policy it is required to compensate neither Chase nor J. Hernandez and his wife, defendant Daniela Hernandez ("D. Hernandez"), (collectively, "the Hernandezes") for losses incurred in a January 2007 arson fire to the insured property. All parties filed cross motions for summary judgment. For the reasons explained below, the Hernandezes' motion for summary judgment is granted in part, as to plaintiff's First Claim for Declaratory Relief. All other motions for summary judgment are denied.

## BACKGROUND

The undisputed facts are as follows: in December 2004, J. Hernandez and Pamela

Saepharn ("Saepharn") purchased a house ("the property") in North Bend, Oregon. At the time, they were engaged to be married. Chase made a mortgage loan to J. Hernandez, secured by the property. While the loan was made to J. Hernandez only, paperwork accompanying the loan documents showed Saepharn as a co-owner of the property.

In April 2005, plaintiff issued the policy in question to J. Hernandez and Saepharn. The policy was purchased through plaintiff's agent, Juul Insurance Agency, Inc. ("Juul"). Chase is named as the first mortgagee on the applicable declaration page of the policy.

Sometime in the summer of 2005, J. Hernandez and Saepharn broke off their engagement. On October 11, 2005, Saepharn called Juul and informed them she had moved to California. Saepharn and the Juul agent discussed the fact that Saepharn's engagement ring would stay in the possession of J. Hernandez at the property. Saephern says she made the call because she wanted to be removed from the policy. After reviewing notes taken during the Juul agent's phone call with Saepharn, Juul agrees Saepharn's name should have been taken off the policy after the October phone call. Saepharn was not, however, removed from the policy at that time.

In January 2006, J. Hernandez married D. Hernandez. In or about April 2006, Saepharn transferred her title and rights to the property via warranty deed. Simultaneously with the warranty deed transfer, J. Hernandez executed a new deed of trust provided by Chase which identified him as the sole owner of the house. At some time in 2006, the Hernandezes moved to Portland. They informed Juul of their change of address on December 20, 2006.

A fire partially destroyed the property on January 2, 2007. The fire was determined to be an arson fire with multiple points of origin. On or about April 19, 2007, J. Hernandez submitted a proof of loss to plaintiff for the damage caused by the fire. On or about September 26, 2007, plaintiff denied coverage to the Hernandezes, claiming the fire loss was excluded from coverage.

The policy insured the property against loss, with certain exclusions. Three particular provision of the policy are at issue in this case.[1] First, the Vandalism/Vacancy Provision excludes from coverage losses caused by vandalism or malicious mischief where the property was vacant for 60 days prior to the loss. Second, the Intentional Loss Provision excludes from coverage losses intentionally caused by the insured. Third, the Mortgagee Clause defines the mortgagee's rights under contract, stating that while the policy normally requires the insurer to compensate the mortgagee even when coverage has been denied to the homeowner, that duty is subject to the mortgagee's compliance with certain requirements, including the requirement to notify the insurer of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.

Plaintiff filed this suit seeking a declaration that (1) it is not obligated to compensate the Hernandezes because the Vandalism/Vacancy Provision excluded the loss from coverage (First Claim for Relief); (2) it is not obligated to compensate the Hernandezes under the policy because they set or conspired to set the fire (Second Claim for Relief); and (3) it is not obligated to compensate Chase under the policy because Chase failed to inform it of a change

---

**1.** The provisions summarized here are quoted in full in the relevant Discussion sections of this opinion.

in ownership of which Chase was aware (Third Claim for Relief).

### STANDARDS

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

### DISCUSSION

I. *First and Second Claims for Relief:*
   *The Hernandezes' and Plaintiff's*
   *Cross–Motions for Summary Judgment*

Plaintiff denied the Hernandezes' claims on two alternative grounds. First, plaintiff contends it is not obligated to pay under the policy because the arson fire was a form of vandalism or malicious mischief caused while the house was vacant. Under the Vandalism/Vacancy Provision of the contract,

2. We do not insure ... for loss: ...

c. Caused by: ...

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant[.]

Pl.'s Ex. K p. 5. In addition, plaintiff argues that an even broader exclusion, denying coverage if the house has been merely unoccupied, rather than vacant, for 60 days, must be read into the contract pursuant to the Oregon Insurance Code ("the Insurance Code").

Second, plaintiff contends it is not obligated to pay because the Hernandezes set or conspired to set the fire. Under the Intentional Loss Provision of the contract,

A. We do not insure for loss caused directly or indirectly by ... ——

8. Intentional Loss

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss[.]

Pl.'s Ex. K, p. 9.

For the reasons stated below, I conclude that summary judgment is inappropriate as to the applicability of the Intentional Loss Provision, but that summary judgment should be granted to the Hernandezes regarding the Vandalism/Vacancy Provision.

### A. First Claim for Relief: Vandalism/Vacancy Exclusion

Plaintiff argues that it is entitled to deny coverage to the Hernandezes because the fire happened under conditions which exclude the loss from coverage under the Insurance Code and the terms of the contract. Plaintiff contends that Oregon law requires this court to read into the contract the uniform exclusion from the Insurance Code, which is a broader coverage exclusion than the Vacancy/Vandalism provision and is more favorable to plaintiff. The Hernandezes argue that the Insurance Code permits substitution of provisions which are more favorable to the insured, and that plaintiff did just that in this case.

Further, the Hernandezes argue that the Vandalism/Vacancy Provision contained in the contract does not apply because (1) arson is not a type of vandalism or malicious mischief, (2) the house was not vacant for sixty days before the fire, and (3) the house was undergoing continuous remodeling and so was "under construction" within the meaning of the provision. Finally, the Hernandezes argue plaintiff was aware they were not living in the house, and that its continued acceptance of their insurance premiums constituted waiver of the exclusionary provision.

I conclude that the Vandalism/Vacancy Provision is an adequate substitute for the uniform exclusion in the Insurance Code. Further, I find that the property was not vacant as a matter of law, and that the Vandalism/Vacancy Provision therefore does not exclude the loss from coverage. I therefore grant the Hernandez's motion for summary judgment on the First Claim for Relief, regarding the Vandalism/Vacancy Provision. Because the house was not vacant, it is unnecessary to address the arguments regarding whether arson is a form of vandalism, whether the house was under construction, and whether plaintiff waived its right to enforce the exclusion.

### 1. Applicability of the Insurance Code Uniform Provision

Plaintiff argues that the insurance policy must be read to include a uniform insurance provision, Oregon Revised Statute § 742.216, which provides a broad exclusion for damage which occurs when the property has been vacant or unoccupied for more than 60 days. The Hernandezes argue that, under the Insurance Code, the Vandalism/Vacancy Provision in the Homeowners Policy is an acceptable replacement for the uniform provision and so the uniform provision should not be read into the contract. I find that the Vandalism/Vacancy Provision is an adequate substitute under Oregon law and that the statutory provision should therefore not be read into the policy.

The Insurance Code exists for the protection of the insurance-buying public and should be liberally construed in pursuit of that goal. Or.Rev.Stat. §§ 731.008, 731.016. The Insurance Code grants courts the authority to add statutorily mandated provisions to an insurance policy where the policy is binding on the insurer, but is not in compliance with the insurance code. Or.Rev.Stat. § 742.038. Insurance companies also have the option under the Code to substitute for one or more of the Insurance Code provisions corresponding provisions that are (1) approved by the Director of the Department of Consumer and Business Services and (2) not less favorable in any respect to the insured. Or.Rev.Stat. § 742.021.

The Insurance Code provides a broad exclusionary provision, which all fire insurance policies must contain unless a different provision is substituted:

A fire insurance policy shall contain a provision as follows: Unless otherwise

provided in writing added hereto this company shall not be liable for loss occurring: . . .

(2) While a described building, whether intended for occupancy by owner or tenant, is vacated or unoccupied beyond a period of 60 consecutive days.

Or.Rev.Stat. § 742.216 (internal quotation marks omitted).

The Hernandezes present a letter from the Department of Consumer and Business services confirming that the exclusion provision in the contract is approved for use in Oregon.[2] In addition, the provision in the policy is more favorable than the Insurance Code uniform provision in three ways: first, the excluded losses are limited to losses due to vandalism and malicious mischief; second, the exclusion applies only when the property has been vacant, as opposed to merely unoccupied, for sixty days; and third, a property is presumptively not vacant when it is under construction. Therefore, since the provision in question is not less favorable in any way to the insured and was approved for use by the Director, the only question is whether the parties intended it to substitute for the uniform provision.

Plaintiff relies on *Farmers Insurance Co. v. St. Paul Fire & Marine Insurance Co.* in arguing that Oregon law requires

provisions in contracts be read to "mean the same thing as" the relevant portions of the Insurance Code. 86 Or.App. 367, 370, 739 P.2d 605, 606 (Or.App.1987). In *Farmers*, the Insurance Code uniform provision at issue read: "If both this and other insurance apply to the same loss, we shall pay our share. Our share will be the amount that this insurance bears to the total limit of all insurance applying to the loss, collectible or not." *Id.* at 369–70, 739 P.2d 605. The parallel provision in the contract stated: "If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss." *Id.* at 370, 739 P.2d 605. Given the similarity in wording, I find the court's holding that the provisions should be read to mean the same thing is inapplicable to the facts in this case, where there are clear, material differences between the provisions. Further, holding that all contractual provisions must be read to mean the same thing as the parallel section of the Insurance Code would deprive § 742.021, which clearly contemplates substitution of materially different provisions, of any meaning.[3]

Plaintiff next argues that the exclusion provision in the contract is not intended to

---

**2.** Plaintiff relies on *Utah Home Fire Insurance Co. v. Colonial Insurance Co.* in arguing that the approval of the Director is not tantamount to a finding that the language in question complies with the Insurance Code. 300 Or. 564, 573 n. 6, 715 P.2d 1112, 1118 (1986). However, the Hernandezes do not assert that the Director's approval, with nothing more, makes the substitution permissible. The Director's approval is a statutory requirement, without which substitution of a provision is not allowed, and the letter of approval demonstrates that particular requirement has been met.

**3.** Plaintiff argues that Or.Rev.Stat. § 742.202 trumps § 742.021 because it requires all fire

insurance policies to contain "the provisions set forth in ORS 742.206 to 742.242." However, § 742.202 itself contains a reference to § 742.204, which allows departure from the command of § 742.202 if the policy is approved by the Director and "[a]ffords coverage with respect to the peril of fire, *not less than* the substantial equivalent of the coverage afforded by the provisions of the standard fire insurance policy as required by Or.Rev. Stat. § 742.202." (emphasis added). This requirement mirrors the § 742.021 exception language, and so allows for substitution of provisions that are not less favorable to the insured.

replace the Insurance Code exclusion, but rather provides an additional protection for the insured when the house is under construction. I find this explanation unpersuasive. First, the Vandalism/Vacancy Provision is located in the policy section detailing exclusions from coverage. If plaintiff had intended the Vandalism/Vacancy Provision to augment, rather than replace, the Insurance Code provision, it could easily have included the Insurance Code provision in the section. Second, if the intent of the provision truly was to "protect" the insured while their house was under construction, a short, straightforward statement that a house is neither "vacant" nor "unoccupied" when it is under construction would have accomplished that goal. It seems highly unlikely a provision designed *only* to provide an additional protection for the insured would be worded in this way or would be located in a long list of exclusions to coverage.

Finally, plaintiff contends that vacant/unoccupied provisions are special because they are for the benefit of the insurer, and that therefore § 742.216 should be read into the contract because the Insurance Code provision is more beneficial to the insurer than the Vandalism/Vacancy Provision in the contract. Plaintiff relies on *Ainslie v. First Interstate Bank of Oregon, N.A.* for the proposition that statutorily required omitted terms must be read into a policy, regardless of which party is benefitted. 148 Or.App. 162, 178 n. 14, 939 P.2d 125, 134 (1997). However, in *Ainslie,* the statute did not allow for substitution or any exceptions. Here, the Insurance Code generally and the fire insurance provisions more specifically allow for the substitution of alternative provisions so long as they are not less beneficial to the insured and are approved by the Director. I find no authority to support plaintiff's argument that in some cases a provision must be no less beneficial to the *insurer* to constitute an adequate substitution under the Insur-

ance Code. Here, both statutory requirements are met, and I find the language of the provision clearly indicates it is a substitute for the more expansive exclusion in the Insurance Code. The policy will not be read to include § 742.216.

## 2. Applicability of the Vandalism/Vacancy Exclusion

By its terms, the Vandalism/Vacancy Provision only excludes loss from coverage if (1) the damage is caused by vandalism or malicious mischief; (2) when the house has been vacant for sixty days or more; and (3) is not under construction. Because I find that the property was not vacant, I conclude the Vandalism/Vacancy provision does not apply.

The parties agree that the applicable rule comes from *Schoeneman v. Hartford Fire Ins. Co. of Hartford, Connecticut,* where the court concluded "vacant" means "contains substantially nothing." 125 Or. 571, 574, 267 P. 815, 816 (1928). The court elaborated:

> Vacant and unoccupied are not synonymous, though sometimes so used. Vacancy, correctly speaking, can only occur when the building is empty, contains substantially nothing; while occupancy, when speaking of residences, refers more particularly to human habitation, the pedis possessio or actual living in the dwelling. Th[is] ... illustrates the difference between vacant and unoccupied: [t]he distinction ... is perhaps more clearly marked in the case of a dwelling house from which the family has removed, leaving a portion of their household goods in the building. It will not be vacant, but occupation is at an end when it is no longer the place of abode of any living person.

*Id.* (internal citations omitted). The Oregon Court of Appeals recently reiterated the rule of *Schoeneman* as the governing

definition of vacant and unoccupied. *Schmidt v. Underwriters at Lloyds of London,* 191 Or.App. 340, 345, 82 P.3d 649, 652 (Or.App.2004).

While the parties agree that *Schoeneman* provides the rule, they disagree on its application. The Hernandezes argue that "substantially nothing" means that if the house contains *any* household goods, it is not vacant. Plaintiff instead focuses on the word "substantially," contending that it implies a more permissive test, and citing to a series of federal courts of appeals decisions focusing on whether the property contains articles necessary for the property's intended use.

In *Vennemann v. Badger Mutual Insurance Co.,* the Eighth Circuit Court of Appeals considered the definition of vacancy within the context of an exclusion provision. 334 F.3d 772, 773 (8th Cir.2003). The court analyzed the approaches of other circuits and rejected the "devoid of contents" test in favor of an approach focusing on whether the house contained "the presence or absence of objects or activities customary for the property's intended use." *Id.; see also Langill v. Vt. Mut. Ins. Co.,* 268 F.3d 46, 48 (1st Cir. 2001) (rental property vacant where sparse furnishings and random evening visits by appellant did not "convey the appearance of residential living"); *Catalina Enterprises, Inc. v. Hartford Fire Ins. Co.,* 67 F.3d 63, 66 (4th Cir.1995) (warehouse was vacant where the objects left on the premises did not indicate that the building was occupied); *Am. Mut. Fire Ins. Co. v. Durrence,* 872 F.2d 378, 379 (11th Cir.1989) (house was vacant because it "lacked amenities minimally necessary for human habitation.")

By contrast, in *Myers v. Merrimack Mutual Fire Insurance Co.,* the Seventh Circuit Court of Appeals stated that vacant means "entirely empty" and "devoid of animate or inanimate objects" under Illi-

nois law. 788 F.2d 468, 471 (7th Cir.1986). Similarly, in *Jelin v. Home Insurance Co.,* the Third Circuit Court of Appeals concluded that in an insurance contract, vacant means "empty and void," and that a house with inanimate objects in it is not vacant. 72 F.2d 326, 326 (3d Cir.1934).

Plaintiff argues the approach of the First, Fourth, Eighth, and Eleventh Circuits is consistent with the Oregon rule. The Hernandezes contend the Seventh and Third Circuits were applying the Oregon rule. I disagree with both parties, and find the Oregon vacancy rule under *Schoeneman* strikes a middle ground. *Vennemann* and other similar cases apply what amounts to an occupancy-based standard to determine whether a property is vacant. Under *Schoeneman,* this cannot be the test, as the court in that case made clear that a dwelling may not be vacant where it is no longer the abode of a living person but a portion of household goods remains. However, the "entirely empty" rule in *Myers* and *Jelin* is a stricter one than the rule identified by the *Schoeneman* court. The use of the word "substantially" implies that *total* emptiness is not required for a finding that a property is legally vacant.

Dictionaries define "substantially" to mean "about" and "being largely but not wholly the specified thing." Black's Law Dictionary 1428–29 (6th ed.1990); Webster's Ninth New Collegiate Dictionary 1176 (1986). Courts have defined "substantially" as having a meaning consistent with "the same or very close." *See Ecolab, Inc. v. Envirochem, Inc.,* 264 F.3d 1358, 1366 (Fed.Cir.2001); *Lonestar Inventions LP v. Nintendo of America, Inc.,* 2009 WL 1011734, at *6 (E.D.Tex. Apr. 14, 2009). Therefore, a property is vacant under Oregon law when it is contains nothing or very close to nothing.

Applying this legal rule to the facts as presented, I find the property in this case was not vacant. While there may be a factual scenario in which the question of whether a dwelling contained very close to nothing would be an issue of triable fact, here I find the contents of the house mandate a legal conclusion. The Hernandezes presented claims in their proof of loss for approximately $15,000. An inventory of items in the house, photos taken after the fire, and deposition testimony support the Hernandezes' contention that the house, while not fully furnished, contained furniture, appliances, and personal items. Because I find the evidence shows the Hernandezes had items in the house, I conclude the property did not contain "substantially nothing" under Oregon law and that it was therefore not vacant. By its terms, then, the Vandalism/Vacancy exclusion does not apply.

### B. Second Claim for Relief: Intentional Loss Exclusion

■ The policy expressly excludes from coverage all losses "arising out of an act an insured commits or conspires to commit with the intent to cause a loss." Under this provision, if the Hernandezes set or conspired to set the fire at their home they are not entitled to recover under the policy. I find that there remains a question of triable fact regarding whether the Hernandezes were involved with the arson.

Plaintiff's theory is that J. Hernandez conspired with a friend to set the fire. In support of this theory, plaintiff presents the following evidence: (1) deposition testimony indicating that J. Hernandez knew how and where the fire was started before that information was available to the public; (2) phone records showing that J. Hernandez's friend Clint Lundgren ("Lundgren"), who provides J. Hernandez's alibi on the day of the fire, neither made nor received any calls on the day of the fire, despite otherwise being constantly on the phone; (3) undisputed statements of facts indicating that there was no forced entry to the house and that the Hernandezes possess the only keys to the house; (4) Lundgren's signature on a form he allegedly signed the day of the fire does not match his signature on his affidavit, suggesting someone else may have signed the form in order to establish an alibi for Lundgren; and (5) financial statements showing J. Hernandez was over $500,000 in debt.

While a reasonable factfinder could conclude, based on this evidence, that J. Hernandez conspired with Lundgren to set the fire while creating an alibi for himself, the Hernandezes present the following evidence in contradiction: (1) deposition testimony that J. Hernandez learned how and where the fire started from the fire investigator; (2) deposition testimony that Lundgren was drunk and at home with J. Hernandez the entire day of the fire; (3) a supplemental investigation report finding the house may have been left unlocked the day of the fire; (4) maps showing the length of time it would take to travel from Lundgren's house to the property and back; and (5) lack of evidence of any motive on Lundgren's part. Just as a reasonable factfinder could believe plaintiff's theory of how the fire started, a reasonable factfinder could also find the Hernandezes' exculpatory evidence credible.

Given the conflicting evidence in the record, there remains a genuine issue of material fact regarding J. Hernandez' role in the arson. It is inappropriate to resolve this matter on summary judgment.

### II. Third Claim for Relief: Chase's and West American's Cross–Motions for Summary Judgment

Plaintiff seeks a declaration that, under the terms of the policy's Mortgage Clause, it is not obligated to insure Chase against

losses incurred in the fire. The Mortgage Clause reads:

K. Mortgage Clause ...

2. If a mortgagee is named in this policy, any loss payable ... will be paid to the mortgagee and you, as interests appear ...

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware.

Chase's Ex. 1, p. 7.

Chase argues (1) it had no obligation to notify plaintiff of the change in ownership, because it was unaware of the change; (2) any obligation to notify plaintiff of the change in ownership was immaterial because plaintiff already knew about the change; (3) Saepharn's deeding of her interest in the property to J. Hernandez was not a "change in ownership" within the meaning of the Mortgage Clause; and (4) because the change in ownership did not increase the risk to plaintiff, Chase's failure to notify plaintiff of the change should not excuse plaintiff's duty to perform under the contract. Plaintiff argues (1) it did not know about the change in ownership; (2) Chase knew about the change in ownership; (3) the plain text of the Clause required Chase to notify it of *any* change in ownership, which Chase failed to do; and (4) whether the change in ownership increased the risk to plaintiff, to the extent it is relevant, is a question of fact, not of law.

Because I find questions of material fact remain as to Chase's knowledge of the change in ownership, plaintiff's knowledge of the change in ownership, and whether the change in ownership increased the risk under the policy, both Chase's and plaintiff's motions for summary judgment on the Third Claim for Relief are denied.

## A. Chase's Knowledge

█ Because Chase's obligation to notify plaintiff of the change in ownership was only triggered under the contract if Chase was aware of the change, I address that issue first. I find that based on the evidence in the record, there remains a genuine issue of triable fact as to whether Chase was aware of the change in ownership.

Whether Chase was "aware" of the change requires a determination of its actual perceptions at the time. *State of Oregon v. Curtiss,* 193 Or.App. 348, 354–55, 89 P.3d 1262, 1264–65 (Or.Ct.App.2004). Chase contends it was never aware of the change in ownership because it did not have a contractual relationship with Saepharn, and so did not pay attention to the presence or absence of her name on the relevant documentation. Although Saepharn was an owner of the house, J. Hernandez was the only borrower obligated to repay loans pursuant to the notes issued by Chase. Saepharn's name appears on the loan documentation, but Chase alleges it was added later, citing the fact that it is typed in a different front than the one Chase customarily uses. While Chase has copies of the documents with Saepharn's name on file, Chase presents deposition testimony that their official auditing process provides for in-depth review of only 10–15% of the documents returned to Chase after closing.

Plaintiff relies on *Collins v. Lumbermen's Insurance Co. of Philadelphia, Pennsylvania* in arguing that Chase was aware of the change as a matter of law. 162 Wash. 1, 297 P. 748 (1931). In *Collins,* the mortgagee claimed it had been aware of a change in ownership and thus was not obligated to inform the insurance company of said change under the terms of the contract. *Id.* at 12, 297 P. 748. However, at trial, the mortgagee's secretary testified

he was in charge of "accounting and records," and testimony also showed that the new policies showing the change in ownership had been delivered to the secretary. *Id.* The court concluded the combination of the delivery to the secretary and the secretary's acknowledged responsibility amounted to awareness as a matter of law. *Id.* at 13, 297 P. 748.

Plaintiff presents evidence that (1) Chase possesses a copy of the warranty deed transferring Saepharn's interest in the property to J. Hernandez; (2) it is standard procedure for Chase to keep copies of loan and refinance documents; and (3) Chase possesses a copy of the Settlement Statement detailing a payment of $13,100.00 to J. Hernandez by Saepharn, contingent upon Saepharn's relinquishment of her interest in the property. I find that these facts do not rise to the level of evidence in *Collins* and are insufficient to find Chase was aware of the change in ownership as a matter of law. While a reasonable factfinder could conclude, based on plaintiff's evidence, that Chase was aware of the transfer as a matter of law, that same factfinder could also be persuaded by Chase's assertion that, given its lack of a contractual relationship with Saepharn, it was unaware of the change.

### B. "Change in Ownership"

■ Chase argues that even if it was aware of the transfer of property interests, the transfer from Saephern and to J. Hernandez was not a "change in ownership" within the meaning of the policy, and thus it had no duty to inform plaintiff of the change in order to preserve its rights under the contract. Plaintiff contends that the transfer was a "change in ownership" under the policy. I agree that under Oregon principles of contract interpretation, the transfer in this case was a "change in ownership" within the meaning of the contract's notification provision.

Oregon law governs with respect to the interpretation of the insurance policy. *Kabatoff v. Safeco Ins. Co. of Am.,* 627 F.2d 207, 209 (9th Cir.1980). The "primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." *Totten v. N.Y. Life Ins. Co.,* 298 Or. 765, 770, 696 P.2d 1082, 1086 (1985). The Ninth Circuit recently held that the interpretation of insurance contracts is a question of law and identified *Hoffman Construction Co. v. Fred S. James & Co.,* 313 Or. 464, 836 P.2d 703 (Or.1992), as the proper analytical framework for construing insurance contracts. *Alexander Mfg., Inc. Employee Stock Ownership Plan & Trust v. Illinois Union Ins. Co.,* 560 F.3d 984, 986–87 (9th Cir. 2009). Courts must first look to see if the contract itself defines the term in dispute. *Hoffman,* 313 Or. at 470, 836 P.2d 703. If it does not, the court must decide if the term at issue has a plain, unambiguous meaning. *Id.* If there is more than one plausible interpretation of the term, the court must then examine the policy as a whole in an attempt to ascertain whether both definitions remain plausible in light of the broader context. *Id.* Once this full contextual examination has been performed, any remaining ambiguity should be construed against the drafter; however, the court does not take these additional interpretive steps unless the term is susceptible to more than one plausible interpretation. *Id.; Alexander,* 560 F.3d at 987.

In *Holloway v. Republic Indemnity Co. of America,* the Oregon Supreme Court applied the *Hoffman* framework to interpret an anti-assignment clause in an insurance policy. 341 Or. 642, 649, 147 P.3d 329, 333 (Or.2006). In *Holloway,* the Oregon Court of Appeals had determined that the use of "rights or duties" in the anti-assignment clause was ambiguous because it did not specify which rights or duties

could not be assigned. *Id.* at 651, 147 P.3d 329. The Court of Appeals then went on to apply the "majority rule" interpretation accepted in other state courts. *Id.* The Oregon Supreme Court reversed, finding that the inclusion of "your" before "rights or duties" sufficiently defined which rights or duties could not be assigned. *Id.* Because the clause was worded broadly and contained no exceptions or qualifications, the phrase carried only one plausible meaning: a prohibition against the assignment of "whatever rights or duties the insured may have under the policy." *Id.* Notwithstanding other courts' recognition of an implicit exception in similarly worded provisions, Oregon principles of contract construction precluded the insertion of any such implicit exception because "[n]othing in the clause suggest[ed] a limitation [or exception]." *Id.* The court expressly rejected the Court of Appeals' reliance on other states' courts, concluding those courts had not followed Oregon's analytical approach to insurance contract construction, and thus were unpersuasive. *Id.* at 653, 147 P.3d 329.

In the instant case, the question is whether Saepharn's deeding of her interest in the property to J. Hernandez, making him the sole owner of the property, constitutes a "change in ownership" which then would trigger Chase's obligation to notify plaintiff. The contract does not provide a definition of "change in ownership," and Chase and plaintiff agree that Oregon courts have not addressed this question. Plaintiff, however, contends that the phrase "any change in ownership" is unambiguous and contemplates no distinction between types of changes in ownership. Chase argues that the phrase "change in ownership" within the exclusion clause refers only to transfers of ownership to a third party stranger to the contractual relationship.

In *Holloway*, the court found "*your rights or duties*" to be susceptible to only one plausible interpretation. 341 Or. at 649, 147 P.3d 329. Similarly, I find "*any change in ownership*" to be unambiguous. The provision, like the one at issue in *Holloway*, is worded broadly and contains no exceptions or qualifications; it therefore refers to all changes in ownership. Saepharn deeded her interest in the property to J. Hernandez, thus triggering Chase's obligation under the notice provision. Chase's reliance on cases from other states does not change the analysis. Chase is correct that Oregon courts have found the existence of conflicting judicial authorities may be evidence of ambiguity. *See, e.g., Cimarron Ins. Co. v. Travelers Ins. Co.*, 224 Or. 57, 355 P.2d 742, 746 (1960). However, as in *Holloway*, we do not reach that step in the analysis because the plain meaning of the contract language speaks for itself. *See also Hoffman*, 313 Or. at 475–77, 836 P.2d 703 (rejecting the use of cases from other jurisdictions as evidence of ambiguity where a phrase had only one plausible interpretation within the context of the contract as a whole).

### C. *Increased Risk*

■ Chase argues that even if it was aware of the change in ownership and was obligated to notify plaintiff, it is improper for plaintiff to deny coverage because the change in ownership did not increase the risk under the Homeowners Policy. In support of this argument, Chase contends that the notice provision of the exclusion clause is a covenant and not a condition of recovery, and that if it was aware of the change in ownership and was obligated to notify plaintiff, this is merely an action for which damages may lie and does not excuse plaintiff's duty to perform its obligations under the contract. I conclude that if plaintiff was not prejudiced by Chase's failure to inform it of the change

in ownership, excusing plaintiff from its duty to perform under the contract would be improper. However, such a determination requires findings of fact and is not properly resolved on a motion for summary judgment.

A condition is "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224 (1981); *Dan Bunn, Inc. v. Brown*, 285 Or. 131, 142–43, 590 P.2d 209 (1979). While it used to be common in contract law to speak of conditions precedent and conditions subsequent, the trend in recent years is to abolish the concept of "condition subsequent" and to ask whether the occurrence or nonoccurrence of the event in question discharges an existing duty. Restatement (Second) of Contracts § 224, comment e (1981). Because the law does not favor forfeiture, "a court will not imply that a covenant is a condition unless it clearly appears the parties so intended it." *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 382 (9th Cir.1965). Many courts require specific language discharging the duty in the case of nonoccurrence of an event in order to consider the provision in question a condition, often in the form of a provision declaring failure to comply with the contract will have the effect of making the agreement null and void. *See, e.g., Phoenix Mut. Life Ins. Co. v. Aetna Ins. Co.*, 166 Tenn. 126, 59 S.W.2d 517, 518 (1933) (holding that generally notice provisions in mortgage clauses of insurance contracts are covenants, not conditions, but where the clause provides "in addition that the failure of the mortgagee to give notice will render the policy void," the clause is a condition "the breach of which will defeat recovery upon the policy").

Oregon courts have not addressed the covenant/condition question with respect to the notice provision of a standard loss clause in an insurance contract. However, in *Lusch v. Aetna Casualty & Surety Co.*, the Oregon Supreme Court considered a notice of accident provision in a car insurance policy. 272 Or. 593, 594, 538 P.2d 902, 902 (1975). The policy stated: "In the event of an accident ... written notice ... shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable ... [and n]o action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy." *Id.* at 595, 538 P.2d 902. Reasoning that the purpose of a notice provision is to give the insurer "time ... to adequately investigate the potential claim and thus protect itself and the insured," the court held the proper question in such a case was "whether the insurer is prejudiced by the failure of the insured to give notice as soon as practicable." *Id.* at 597, 538 P.2d 902.

While *Lusch* concerned failure to notify an insurance company of a potential claim, I find its reasoning to be useful in determining whether Chase's failure to notify plaintiff of the change in address excused plaintiff's duty to perform under the contract. As the contract does not contain a "null and void" or similar provision expressly stating that failure to comply with the notice provision would excuse plaintiff from its duty to perform under the contract, the question should be whether plaintiff was prejudiced by Chase's failure to comply with this particular contractual provision. Proper analysis of this issue requires a determination of whether Saepharn's relinquishment of her interest in the property increased risk under the policy such that Chase's failure to inform plaintiff of the change deprived plaintiff of the opportunity to increase premiums or deny continued coverage. Because the question

of risk is a disputed issue of fact, it cannot be resolved on summary judgment.[4]

### D. West American's Knowledge

■ Chase argues that any duty it may have had to inform plaintiff of the change in ownership under the contract is immaterial because plaintiff already knew about the transfer. Plaintiff does not appear to dispute Chase's claim that it would have had no duty to inform if plaintiff was already aware of the change in ownership, but rather asserts it had no such knowledge. I find there is a genuine issue of triable fact regarding whether plaintiff knew about the change in ownership.

I first note that the question of whether plaintiff was aware of the change in ownership bears on the prejudice analysis outlined above. In *Lusch*, the court quoted *Bailey v. Universal Underwriters Insurance* for the proposition that "when the insurer had actual notice of the accident, including most of the circumstances of the accident, and undertook to investigate it, the fact that such notice was not given by the named insured is wholly immaterial." 272 Or. at 598, 538 P.2d 902 (quoting 258 Or. 201, 216, 474 P.2d 746, 754 (1970)). Again, while notifying an auto insurance company of a possible claim is not the same as notifying a homeowners insurance company of a change in ownership, the underlying reasoning applies. It would be difficult to conclude plaintiff was prejudiced by Chase's failure to inform plaintiff of facts plaintiff already knew.

Chase presents evidence that on October 11, 2005, Saepharn called Juul and requested her name be removed from the Homeowners Policy. The Juul agent's notes from the phone call suggest Saepharn also informed the agent she would be moving to California and that her engagement ring would remain in the house. Further, Chase asserts that when J. Hernandez changed his address on the Juul website, plaintiff was notified that he had married someone other than Saepharn and moved out of the property. Plaintiff responds that it was aware of a change in occupancy, but not a change in ownership, pointing to the fact that the change in ownership occurred six months after the October 2005 conversation. I find that based on the evidence in the record, a reasonable factfinder could find support for either Chase's or plaintiff's position.

### CONCLUSION

Defendants Hernandezes' motion for summary judgment (doc. 52) is granted in part (as to plaintiff's First Claim for Relief) and denied in part (as to plaintiff's Second Claim for Relief). Defendant Chase's motion for summary judgment (doc. 69) is denied. Plaintiff's motions for summary judgment (docs. 76 and 82) are denied. Finally, the parties' request for oral argument is denied as unnecessary. IT IS SO ORDERED.

4. Chase argues there was no increase in risk as a matter of law. However, it cites no Oregon case law, and relies on cases from other jurisdictions which are distinguishable. For example, in *First Federal Savings & Loan Ass'n v. Nichols*, the court concluded a vacant property was higher risk than an occupied property as a matter of law. 33 A.D.2d 259, 306 N.Y.S.2d 542, 546 (1970). Chase also relies on *FBS Mortgage Corp. v. State Farm Fire Casualty Co.* for the proposition that notice requirements only apply to "the sort of change in occupancy that would preclude recovery by the named insureds." 833 F.Supp. 688, 692 (N.D.Ill.1993). However, in *FBS* the court's statement had been agreed to by both parties as a correct statement of the law and so was not in dispute. *Id.* Neither case convinces me that the question of increased risk can be resolved at this stage.